**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| JACKSON DANIEL BARILLAS RESINOS,<br><br>   *Petitioner*,<br><br> v.<br><br>TAMMY MARICH, in her official capacity as Acting Field Office Director, Buffalo Field Office, Enforcement and Removal Operations, U.S. Immigration & Customs Enforcement; JOSEPH FREDEN, in his official capacity as Deputy Field Office Director of the Buffalo Federal Detention Facility; TODD LYONS, in his official capacity as Acting Director U.S. Immigration and Customs Enforcement; and KRISTI NOEM, in her official capacity as U.S. Secretary of Homeland Security; U.S. Department of Homeland Security; JOSEPH EDLOW, in his official capacity as Director of U.S. Citizenship and Immigration Services; ROSE KENDRICK, in her official capacity as Acting Director of U.S. Citizenship and Immigration Services National Benefits Center<br><br>   *Respondents*. | Case No. _____<br><br>**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT**<br><br>**ORAL ARGUMENT REQUESTED** |

## <u>INTRODUCTION</u>

1. Jackson Daniel Barillas Resinos, ("Jackson" or "Petitioner") is an 18-year-old young man who was detained by Immigration and Customs Enforcement ("ICE") on November 5, 2025, and is currently confined at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York, without explanation or legal authority.

2. Jackson came to the United States as an unaccompanied child in 2021, and was placed in the custody of the Office of Refugee Resettlement ("ORR") pursuant to Section 1232 of the INA which requires ORR to consider whether the child is a risk of flight, a danger to his or her

self, or the community before releasing him to a sponsor.  After a month in ORR custody, Jackson was released to his sponsor, his sister, after ORR determined that he was neither a flight risk nor a danger to himself or others.

3.      In 2024, he was granted Special Immigrant Juvenile Status ("SIJS").  SIJS is a humanitarian immigration protection enshrined in federal statute that is designed to afford certain immigrant children, like Jackson, who have suffered parental abuse, neglect, abandonment, or similar mistreatment, the opportunity to remain safely and permanently in the United States.  But for a years-long visa backlog, Jackson would have been able to adjust status and obtain lawful permanent resident ("LPR") status.

4.      When the United States Citizenship and Immigration Services ("USCIS") granted Jackson's SIJS petition, it also found, based on the relevant positive and negative discretionary factors, that Jackson warranted deferred action.  Deferred action is a form of prosecutorial discretion that protects beneficiaries from deportation and makes them eligible to apply for employment authorization.  USCIS's decision to grant Jackson deferred action allowed him to attend school, work legally, and build a stable life without the threat of deportation while he was waiting to apply for a green card.

5.      Despite his SIJS, deferred action, and pathway to lawful permanent resident ("LPR") status in the United States, Jackson was arrested and detained by Respondents.  At the time of his arrest, Jackson was not provided with a bond hearing or an opportunity to show -- as the government had previously determined when it released him to a sponsor-- he presents no danger to the community, nor is he a flight risk.

6.      Despite several requests, Respondents have not provided Jackson with any information pertaining to the basis for arrest or detention.  Moreover, while Jackson was unlawfully detained, USCIS—without warning or explanation—terminated his deferred action.

7.      Upon information and belief, Respondents are holding Jackson in detention pursuant to a July 8, 2025, Department of Homeland Security ("DHS") memorandum that declares that any noncitizen who entered the United States without inspection or parole is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and categorically ineligible for bond.  This radical new interpretation of 8 U.S.C. § 1225(b)(2)(A) is contrary to the to the plain text of the relevant statutes, legislative history, and decades of agency practice.  Indeed, as of November 18, 2025, 282 federal district courts nationwide had rejected DHS's proffered interpretation of the relevant statutes.  *See Demirel v. Fed. Det. Ctr. Phila.*, No. 25-cv-05488, slip op. at 1 (E.D. Pa. Nov. 18, 2025), ECF No. 11 (opinion on habeas petition) (noting that there are 288 district court decisions addressing the statutory construction of 8 U.S.C. § 1225 and "[i]n all but six, the Government's interpretation of the INA—the same interpretation it urges here—was rejected") & ECF No. 11-1 (app'x listing 288 district court decisions on INA bond hearing entitlement)..

8.      Jackson's arrest violated his statutory and constitutional rights.  His ongoing detention—particularly without any individualized review—serves no lawful purpose and runs afoul of the substantive and procedural due process protections of the Fifth Amendment, the Administrative Procedure Act ("APA"), the *Accardi* doctrine, and the Immigration and Nationality Act ("INA") and its implementing regulations.

9.      Jackson respectfully asks this Court to hold that his continued detention is unlawful, that the unilateral termination of his deferred action was unlawful, and that he must be immediately released from custody, or, in the alternative, be scheduled for a bond hearing within seven calendar

days of this Court's order.  Jackson also respectfully asks that this Court order Respondents not to transfer him outside of this District for the duration of this proceeding.

## PARTIES

10.     Petitioner Jackson Daniel Barillas Resinos is an 18-year-old Honduran national who entered the United States as an unaccompanied child.  He was detained by ORR for four weeks, which then determined that it was safe to release him to a sponsor, his older sister.  Jackson has resided in the United States for the past four years.  Before his unlawful detention, Jackson's was granted SIJS with deferred action.

11.     Respondent Tammy Marich is sued in her official capacity as Acting Field Office Director, Buffalo Field Office, Enforcement and Removal Operations, ICE.  Respondent Marich is a legal custodian of Jackson.

12.     Respondent Joseph Freden is sued in his official capacity as Deputy Field Office Director of the BFDF.  Respondent Freden is a legal custodian of Jackson.

13.     Respondent Todd Lyons is sued in his official capacity as Acting Director of ICE. As the Acting Director of ICE, Respondent Lyons is a legal custodian of Respondent.

14.     Respondent Kristi Noem is sued in her official capacity as Secretary of DHS.  As the head of DHS, the agency tasked with enforcing immigration laws, Respondent Noem is Jackson's ultimate legal custodian.

15.     Respondent Joseph Edlow is sued in his official capacity as Director of USCIS, the component of DHS that administers the adjudication of SIJS petitions, deferred action, and related employment authorization.

16.     Respondent Rose Kendrick is sued in her official capacity as Acting Director of USCIS's National Benefits Center, which previously conducted SIJS deferred action adjudications

and issued notices of termination of individual SIJS deferred action grants and related employment authorization.  Respondent Kendrick signed Jackson's notice of termination of deferred action.

## JURISDICTION AND VENUE

17.     Federal district courts have jurisdiction to hear habeas corpus claims by noncitizens challenging the lawfulness or constitutionality of their detention.  *See Demore v. Kim*, 538 U.S. 510, 516–17 (2003) (recognizing habeas jurisdiction over immigration detention challenges); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (same).

18.     This Court has jurisdiction under the U.S. Constitution.  U.S. Const. art. I, § 9, cl. 2 ("The privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.")

19.     The Court also has jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1651 (the All-Writs Act), 28 U.S.C. § 2241 (habeas corpus), and 5 U.S.C. § 701 (the Administrative Procedure Act).

20.     This Court has additional remedial authority under 28 U.S.C. §§ 2201–02 (the Declaratory Judgment Act) to grant injunctive and declaratory relief.

21.     Venue is proper under 28 U.S.C. § 2241(d) because Jackson is detained at a facility within this District.

22.     Under 28 U.S.C. § 2243, a court hearing a petition for a writ of habeas corpus must issue the writ or an order to show cause to the Respondent "forthwith."  28 U.S.C. § 2243.  If an order to show cause is issued, the Court must require a reply from Respondent "within three days unless for good cause additional time, not exceeding twenty days, is allowed."  *Id.*

23.     Administrative exhaustion is unnecessary because it would be futile, as Respondents have not provided Jackson with an opportunity to seek bond and are seemingly taking the position that he is subject to mandatory detention under 8 U.S.C. § 1225(b).  The Board of

Immigration Appeals recently held that the immigration courts lack the authority to hear bond requests from any noncitizen who entered the United States without having been lawfully admitted, concluding that such noncitizens are subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). *In re Hurtado*, 29 I&N Dec. 216 (BIA 2025). The immigration courts are bound by this decision. Thus, it would be futile for Jackson to seek release through the administrative process. *See Alvarez Ortiz v. Freden*, --- F. Supp. 3d ----, 2025 WL 3085032 (November 5, 2025) (finding that petitioner had exhausted his administrative remedies but that "even if he had not, this Court would find that exhaustion was futile because immigration judges are bound to follow *Hurtado*[.]")

24. Additionally, administrative exhaustion is not required where a case solely involves matters of statutory construction.

## **RELEVANT FACTS AND PROCEDURAL HISTORY**

### **A. Jackson Entered the United States as an Unaccompanied Child**

25. Jackson came to the United States in August 2021, when he was fifteen years old, after experiencing abuse, neglect, and abandonment in Honduras. At that time, DHS determined that he was an "unaccompanied alien child" ("UC") pursuant to 6 U.S.C. § 279(g)(2) and immediately transferred him to the custody of Office of Refugee Resettlement ("ORR"), within the Department of Health and Human Services ("HHS"), pursuant to the Trafficking Victims Protection Reauthorization Act ("TVPRA"). *See generally,* 8 U.S.C. § 1232.

26. As a UC, Jackson's initial care and custody were entrusted to ORR, and the TVPRA governed his detention and release. Among other things, the TVPRA requires that all UCs be placed in the least restrictive setting and favors their release from ORR custody to a "sponsor" if they present no risk of flight or danger to the community. 8 U.S.C. § 1232(c)(2)(A), (c)(3)(A). Pursuant to that statutory framework, ORR determined that Jackson should be released to a

sponsor, his sister. *See* Ex. A, ORR Verification of Release. In order to release Jackson, ORR necessarily determined that he was neither a flight risk nor a danger to the community.

27. The TVPRA also requires that, if DHS wishes to pursue the removal of UCs, they be placed in full removal proceedings under Section 240 of the Immigration and Nationality Act ("INA"). 8 U.S.C. § 1232(a)(5)(D)(i). Accordingly, Jackson was issued a Notice to Appear ("NTA"), charging him as removable for being present in the United States without admission or parole and ordering him to appear in Immigration Court for Section 240 proceedings. *See* Ex. B, 2021 NTA.

28. The warrant for his arrest also indicates that he was being "taken into custody as authorized by Section 236 of the Immigration and Nationality Act." Ex. C, August 14, 2021 ICE Arrest Warrant.

**B. Jackson Was Granted Special Immigrant Juvenile Status in 2024**

29. After obtaining pro bono legal services, Jackson, by and through his attorneys, applied for SIJS which is a two-step process, requiring both a family court proceeding and an application to USCIS.

30. First, on July 30, 2024, a New Jersey State Family Court awarded his sister sole legal and physical custody of Jackson and made the predicate findings for SIJS, including that Jackson had been abused, neglected, and abandoned and that it was not in his best interest to return to Honduras.

31. Jackson then was able to and did submit a SIJS petition to USCIS.

32. On November 7, 2024, USCIS granted Jackson's application for SIJS, putting him on a pathway to LPR status in the United States.

33.    However, because of a visa backlog, young people like Jackson with SIJS must wait—often years—before they are able to apply for a green card.  As a result, USCIS concurrently granted him deferred action for a four-year period, expiring November 7, 2028.  *See* Ex. D, Jackson's I-360 Approval Notice.

34.    On November 25, 2024, DHS and Jackson jointly moved to dismiss his removal proceedings based on his grant of SIJS.

35.    On February 17, 2025, the Immigration Judge granted the motion to dismiss, ending Jackson's removal proceedings.  *See* Ex. E, Dismissal Order.

### C.  Jackson's Unlawful Detention and the Termination of his Deferred Action

36.    Jackson's deferred action allowed him to apply for employment authorization, which he obtained so that he could legally work.

37.    In November 2025, Jackson traveled to Buffalo, New York, to work on a construction project.  On November 5, 2025, while in Buffalo, Jackson was unlawfully arrested by immigration authorities after he was stopped at or near the Peace Bridge.  Thereafter, he was detained in BFDF.

38.    On information and belief, prior to arresting and detaining Jackson, DHS did not make an individualized determination as to whether, despite ORR's earlier determination that he did *not* pose a public safety or flight risk that would preclude his release from federal custody, he now presents a flight risk or a danger to the community.  Such a determination is required under Section 1226(a) of the INA.

39.    On November 6, 2025, through counsel, Jackson sought release from ICE custody on the basis that he is not subject to mandatory detention under Section 1225 of the INA.  *See* Ex. F, Letter to Deportation Officer.

40.     On November 13, 2025, a representative from ICE responded to Jackson's request, stating merely, "After careful review and consideration, ICE has denied your request for release at this time."  *See* Ex., G, November 13. 2025, Email from ICE officer.

41.     Since then, Jackson—through counsel—has repeatedly sought the documents outlining the statutory basis for his detention to no avail.  *See* Ex. H, Consolidated Emails from Counsel to BFDF.  Respondents steadfastly refuse to explain why he is being held.

42.     In the meantime, on November 10, 2025, without any prior notice, USCIS unilaterally terminated Jackson's grant of deferred action without any explanation or an opportunity to seek reconsideration or appeal.  *See* Ex. J, Notice of Termination.

43.     Jackson has no criminal history warranting termination.

44.     His employment authorization will automatically be revoked within 15 days of the termination of his deferred action.  *Id*. at 2.

45.     On November 6, 2025, ICE filed a Notice to Appear in the Batavia immigration court, charging Jackson under 8 U.S.C. § 1182(6)(A)(i) with being present in the United States without having been admitted or paroled.  *See* Exhibit I, 2025 NTA.  This is the same charge DHS originally filed against him.  Almost exactly a year ago, the government agreed to a joint motion to terminate removal proceedings based on this charge, recognizing that Jackson's grant of SIJS gave him a path to lawful permanent residence despite his method of entry into the United States, 8 U.S.C. § 1255(h)(2)(A),[1] and his grant of deferred action protected him from removal while he awaited his opportunity to apply for a green card.   .

---

[1] The new NTA adds the additional charge of lacking proper documents for entry under 8 U.S.C. § 1182(a)(7)(A)(i)(I). This ground of inadmissibility is also waived for Special Immigrant Juveniles seeking to become LPRs.  8 U.S.C. § 1255(h)(2)(A). *Compare* Ex. I *with* Ex. B.

46.     Since being detained, Jackson has experienced stress, worry, and anxiety about what will happen to him.  Those worries have manifested themselves in physical symptoms such as headaches and facial pain.

## RELEVANT LEGAL FRAMEWORK

### A.     The TVPRA Governs the Detention and Release of UCs.

47.     Congress has recognized that noncitizen youth who come to the United States without a parent are especially vulnerable and must receive additional protections.  Therefore, through the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA), Congress set forth special protections for UCs.  8 U.S.C. § 1232.  A UC is defined as a child who (A) lacks lawful immigration status in the United States; (B) is under the age of 18; and (C) has no parent or legal guardian in the United States, or no such parent or legal guardian is available to provide care and physical custody.  6 U.S.C. § 279(g)(2).

48.     Through the TVPRA, Congress amended the INA to provide that UCs can only be removed through Section 240 removal proceedings.  8 U.S.C. § 1232(a)(5)(D).  Therefore, 8 U.S.C. § 1229a exclusively governs removal proceedings of UCs and is the only process for determining whether they can stay in the United States or be removed.  8 U.S.C. § 1229a(3).

49.     The TVPRA requires that the HHS, through ORR, manage the care and custody of UCs.  8 U.S.C. § 1232(c)(2).  The statute requires ORR to place the UC "in the least restrictive setting that is in the best interest of the child."  8 U.S.C. § 1232(c)(2)(A).  In considering this, the statute directs the government to "consider danger to self, danger to the community, and risk of flight."  *Id.; see also* 6 U.S.C. § 279(b)(2)(A).  ORR may release the UC to a "sponsor" who already lives in the country but was not with the UC when DHS apprehended them—often a parent or relative—so long as these and other criteria are satisfied.  *Id.; see also* 45 C.F.R. § 410.1201.

**B.**     ***SIJS Provides a Pathway to Permanent Status for Certain Vulnerable Young People, Like Jackson.***

50.     Separate and apart from UCs, in 1990, Congress created SIJS to protect another category of vulnerable immigrant children and provide them a pathway to citizenship. Immigration Act of 1990, Pub. L. No. 101-649, § 153, 104 Stat. 4978 (1990) (amending various sections of the INA); Special Immigrant Status, 58 Fed. Reg. 42843, 43844 (Aug. 12, 1993) ("This rule alleviates hardships experienced by some dependents of United States juvenile courts by providing qualified [noncitizens] with the opportunity to apply for special immigrant classification and lawful permanent resident status, with [the] possibility of becoming citizens of the United States in the future."). Since 1990, Congress has amended the INA multiple times to expand the protections of SIJS, most recently in 2008, through the TVPRA. Pub. L. 110- 457, § 235(d), 122 Stat. 5044 (2008).

51.     To be granted SIJS, youths must first "satisfy[] a set of rigorous, congressionally defined eligibility criteria." *Osorio-Martinez v. U.S. Att'y Gen*., 893 F.3d 153, 163 (3d Cir. 2018). Specifically, the INA provides that those eligible for SIJS designation, as relevant here, are noncitizen youth who are present in the United States; who have been declared dependent on a state juvenile court; who cannot be reunified with one or more parents because of abuse, neglect, or abandonment; and for whom it has been determined that it is not in their best interest to return to their country of origin. 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11(c).

52.     Crucially, a noncitizen youth is eligible for SIJS only if he or she is "present in the United States." 8 U.S.C. § 1101(a)(27)(J) (emphasis added). This requirement makes perfect sense in light of the purpose of the SIJS statute. SIJS is predicated on a state court finding that the youth cannot be safely reunited with parent(s), nor safely sent back to their country of origin. The design of this program, then, "show[s] a congressional intent to assist a limited group of abused

children to remain safely in the country with a means to apply for LPR status." *Osorio-Martinez*, 893 F.3d at 168 (quoting *Garcia v. Holder*, 659 F.3d 1261, 1271 (9th Cir. 2011) (abrogated on other grounds)).

53.    Youth can apply for SIJS upon receipt of a state court order finding they cannot be safely reunited with parent(s) nor safely sent back to their country of origin.  The application process includes submitting a Form I-360 SIJS Petition to USCIS, along with the predicate state court order and other supporting evidence.  *See* 8 C.F.R. § 204.11(b).  USCIS then considers the application and supporting documentation to determine whether to exercise its statutory "consent function" to approve the petition.  *See* 8 U.S.C. § 1101(a)(27)(J)(iii).  By exercising its statutory consent function to grant SIJS, the agency affirms the bona fides of the state court's determinations, including that the child's return to their country of origin would be contrary to their best interests.  8 U.S.C. § 1101(a)(27)(J)(iii); 8 C.F.R. § 204.11(b)(5).

54.    The main benefit of SIJS—and, indeed, its core purpose—is to give vulnerable young people like Jackson the right to seek LPR status while remaining in the United States, through a process called adjustment of status.  *See* 8 U.S.C. 1255(h).

55.    To facilitate this process, Congress removed numerous barriers to adjustment of status for SIJS beneficiaries through amendments to the SIJS provisions in 1991 and again in 2008.  For example, SIJS youth are "deemed . . . to have been paroled into the United States" for the purposes of adjustment of status.  8 U.S.C. § 1255(h)(1).  Further, Congress exempted SIJS youth from many common inadmissibility grounds, including the ones now charged against Jackson, and created a generous waiver of many of the non-exempted inadmissibility grounds.  8 U.S.C. § 1255(h)(2).  And Congress explicitly provided that certain grounds for removal "shall not apply to a special immigrant described in section 1101(a)(27)(J) of [the SIJS statute] based upon

-12-

circumstances that existed before the date the [noncitizen] was provided such special immigrant status." 8 U.S.C. § 1227(c).

56.    Although SIJS renders youth eligible to apply for adjustment, they can only do so when a visa is immediately available to them.  8 U.S.C. § 1255(a).  However, there is an annual limit on visas available to SIJS beneficiaries.  8 U.S.C. § 1153(b)(4).  And since 2016, the number of SIJS beneficiaries has surpassed the supply of available visas for most countries, leaving what has been estimated to be more than 100,000 young people in a backlog, waiting to apply for a green card.[2]

57.    Despite the immediate unavailability of visas, waitlisted SIJS beneficiaries are the same vulnerable young people that the SIJS statute was designed to protect.  The fact that no visa is currently available because a numerical limit has been reached changes nothing about their eligibility determination by USCIS, or Congress's intent that they be afforded a pathway to LPR status and, eventually, citizenship.  These are the same individuals who state courts have determined cannot safely be reunited with their parent(s) or returned to their home country.

58.    The structure of the SIJS program—including the requirement that recipients remain in the United States to move forward in the process, the grant of parole for the purpose of adjustment, and the waiver of grounds of inadmissibility and removability—evinces Congress' intent that SIJS recipients remain safely in the United States until they can adjust to become LPRs. And given that they are only "a hair's breadth from being able to adjust their status" and have a

---

[2]    *See* R. Davidson et. al, False Hopes: Over 100,000 Immigrant Youth Trapped in the SIJS Backlog                                                              (2023), https://static1.squarespace.com/static/5fe8d735a897d33f7e7054cd/t/656a48a3f02597441a4cbf95/1701464285675/2 023-false-hopes-report.pdf.

"substantial legal relationship" with the United States, these individuals have been recognized as enjoying meaningful constitutional due process rights. *Osorio-Martinez*, 893 F. 3d at 173-75.

59.    In March 2022, to address the SIJS visa backlog, USCIS announced that all young people granted SIJS would also be considered for a discretionary grant of deferred action, meaning that they would be protected from deportation while waiting for a visa to become available.  In enacting this policy, USCIS acknowledged that "Congress likely did not envision that SIJ petitioners would have to wait years before a visa became available[.]"  USCIS Policy Alert, PA-2022-10, "Special Immigrant Juvenile Classification and Deferred Action" (March 7, 2022), available        at:        https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20220307-SIJAndDeferredAction.pdf.

60.    Deferred action is an act of prosecutorial discretion that defers efforts to deport a noncitizen from the United States for a certain period.  In the case of SIJS recipients awaiting visas, USCIS granted deferred action for four years. *See id.*  These individuals are also eligible to apply for employment authorization under 8 C.F.R. § 274a.12(c)(14).

61.    In June 2025, USCIS rescinded the SIJS deferred action policy, deciding to no longer consider granting deferred action to SIJS youth who were unable to apply for a green card due to the visa backlog..[3]  However, this policy change had no impact on SIJS beneficiaries, like Jackson, who had already received deferred action. *See* USCIS Policy Alert, PA-2025-07, "Special Immigrant Juvenile Classification and Deferred Action" (June 6, 2025), 20250606-SIJDeferredAction.pdf (stating that noncitizen "with current deferred action based on their SIJ

---

[3]  On November 19, 2025, the United States District Court for the Eastern District of New York stayed USCIS's rescission of the 2022 policy of automatic consideration of deferred action for SIJS grantees. *A.C.R v. Noem*, No. 1:25-cv-3962 (E.D.N.Y., Nov. 19, 2025).

classification will generally retain this deferred action . . . until the current validity periods expire.").

62.    Only USCIS may terminate a SIJS beneficiary's deferred action before it expires, and only if it determines, for example, that a favorable exercise of discretion is no longer warranted; the individual's SIJS petition was approved in error and is revoked; or the prior deferred action was granted in error.    USCIS Policy Manual, vol. 6, part J, ch. 4, https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-4.

### C.    *Jackson's Detention Is Not Governed by 8 U.S.C. § 1225(b)(2)(A).*

63.    Jackson is not subject to mandatory detention 8 U.S.C. § 1225(b)(2)(A).  The two primary provisions of the United States Code that govern the detention of noncitizens prior to an order of removal are 8 U.S.C. § 1226(a) and 8 U.S.C § 1225(b).[4]

64.    Section 1226 "authorizes the Government to detain certain [noncitizens] already in the country pending the outcome of [Section 240] removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018).  Individuals detained under Section 1226(a) are generally entitled to a bond hearing at the outset of their detention.  *See* 8 C.F.R. §§ 1003.19(a), 1236.1(d).

65.    Detention under Section 1226(a) is discretionary, not mandatory; the government "may release the alien on—(A) a bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or (B) conditional parole[.]"  8 U.S.C. §1226(a)(2)(A)-(B).  Under Section 1226(a), prior to detention, immigration officers must allow a noncitizen to "demonstrate to the satisfaction of the officer that . . . release would not pose a danger

---

[4]  Section 1226(c) concerns mandatory detention for noncitizens who have been convicted, or in some circumstances arrested, for certain criminal offenses, and is irrelevant to Jackson's petition as he has never been arrested on any criminal charge.

to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8).

66.     If, after individualized consideration, ICE chooses to detain the noncitizen pursuant to Section 1226(a) pending removal proceedings, the individual may ask for a bond redetermination hearing before the immigration judge. 8 C.F.R. § 1003.19.

67.     The agents who arrested Jackson did not provide him with an opportunity to explain why he met the conditions for release under Section 1226(a).

68.     Instead, they seemingly detained him under Section 1225(b), which governs detention of noncitizens seeking entry into the United States (i.e., "applicants for admission") – and is inapplicable to Jackson. Section 1225(b)(2)(A) provides that, "if the examining officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b). (emphasis added). In other words, Section 1225(b) mandates detention for those noncitizens subject to it, and they are not eligible to be considered for release.

69.     The INA provides for mandatory detention of two groups of noncitizens encountered "at the Nation's borders and ports of entry." *Jennings*, 583 U.S. at 288. The first group consists, generally, of those who are subject to expedited removal for being apprehended upon arrival near the border or for being unable to show that they have been physically present in the United States for more than two years until a determination has been made as to whether they have a credible fear of persecution. 8 U.S.C. § 1225(b)(1). Notably, UCs are not subject to expedited removal. 8 U.S.C. § 1232(a)(5). The second group subject to mandatory detention consists of anyone alleged to be an "applicant for admission" who is "seeking admission" and

whom an "examining immigration officer determines . . . is not clearly and beyond a doubt entitled to be admitted." *See* 8 U.S.C. § 1225(b)(2)(A).

70.     Jackson's detention is not—and could not—be governed by Section 1225(b)(2)(A). *First*, Jackson's initial detention was plainly under the discretionary authority of Section 1226 because, as a UC, he could not have been subject to mandatory detention under 1225(b)(2)(A). Instead, his detention was governed by the TVPRA, which requires UCs—even those who turn 18 and age out of ORR custody—to be placed in the "least restrictive setting available." 8 U.S.C. § 1232(c)(2)(B). This is entirely inconsistent with mandatory detention. Further, the warrant for Jackson's 2021 arrest, reflects that he was being detained pursuant to Section 236 of the INA – a discretionary detention statute. *See* Ex, C.

71.     Moreover, 8 C.F.R. § 236.3, "Processing, detention, and release of alien minors," notes that the custody of minors who are *not* UCs may be governed by either § 1225 or § 1226, *see* 8 C.F.R. § 236.3(j)(3)–(4), but makes no indication that the custody of UCs can be governed by § 1225. Accordingly, numerous courts have found that noncitizens previously processed as UCs are not detainable under § 1225(b)(2)(A). *See Lopez*, 2018 WL 2932726, at *6; R.D.T.M., 2025 WL 2686866, at *4; *Torres v. Wamsley*, No. C25-5772 TSZ, 2025 WL 2855379, at *3–5 (W.D. Wash. Oct. 8, 2025).

72.     *Second*, Jackson's SIJ status only confirms that his detention cannot be governed by § 1225(b)(2)(A). An award of SIJS confirms that a noncitizen is an "alien present in the United States," not one "seeking admission." *See Rodriguez v. Perry*, 747 F. Supp. 3d 911, 916 (E.D. Va. 2024). Addressing whether SIJS beneficiaries are properly detained under 8 U.S.C. §§ 1225 or 1226, the *Rodriguez* court ruled that, because "the INA defines a 'special immigrant' as 'an immigrant who is present in the United States,'" a noncitizen's "SIJ status weighs in favor of

finding that . . . he was an 'alien present' in the United States and was entitled to a bond hearing" under 8 U.S.C. § 1226. *Id*.; *see also* § 1101(a)(27)(J).

73.     Moreover, as another court recently stressed, SIJS status "'bespeak[s] a substantial legal relationship between [SIJS beneficiaries] and the United States—a relationship far more significant than' the relationship possessed between an initial entrant into this country." *Del Cid v. Bondi*, No. 3:25-CV-00304, 2025 WL 2985150 (W.D. Pa. Oct. 23, 2025) (quoting *Osario-Martinez*, 893 F.3d at 174). Perhaps in tacit recognition of the ties Jackson has formed in this country, the Notice to Appear ICE recently filed against him does not designate him as an "arriving alien," but as one "present in the United States who has not been admitted or paroled." Ex. I, 2025 NTA at 1. For these reasons, numerous other courts have agreed that SIJS beneficiaries—regardless of how they entered the United States—may only be detained under Section 1226(a). *See Diaz-Calderon v. Barr*, No. 2:20-cv-11235-TGB, 2020 WL 5645191 at *11 (E.D. Mich. Sept. 22, 2020); *Duchi-Naula v. Tatum*, No. 1:25-cv-00247-LM-AJ, Doc. 17 (D.N.H. July 7, 2025); *Tocagon v. Moniz*, Case 1:25-cv0-12453-MJJ (D. Mass. Sept. 29, 2025); *Casun v. Hyde*, No. 25-CV-427-JJM-AEM, 2025 WL 2806769, at *2 (D.R.I. Oct. 2, 2025).

74.     Finally, the BIA's decision in *Matter of Q. Li* does not apply to Jackson (nor does the erroneous decision in *In re Yajure Hurtado*), both for these reasons and others. *Matter of Q. Li* involved a noncitizen who was apprehended yards from the border, paroled into the country under 8 U.S.C. § 1182(d)(5)(A), and later detained when her parole was terminated. 29 I&N Dec. at 69-70. Here, Jackson was initially detained as a UC and was released pursuant to the TVPRA; he has since lived in the United States for four years and been granted SIJS. Under the circumstances, it would be absurd to consider him to be "seeking admission.". *See Torres*, 2025 WL 2855379, at *3-5; R.D.T.M, 2025 WL 2686866, at *4; *accord Contreras Maldonado v.*

*Cabezas*, No. 25–13004, 2025 WL 2985256 (D.N.J. Oct. 23, 2025) (finding the "invocation of 1225(b) as applied to Petitioner," a former UC who had resided in the United States for years, to be "inconsistent with the statutory framework distinguishing between entry-based and interior detention authority"). In any event, this Court owes no deference to *Matter of Q. Li* or *Matter of Yajure Hurtado* under *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024). *Cf. Rodriguez Vasquez*, 2025 WL 2782499, at \*1, n.3 (rejecting and noting many other cases rejecting the BIA's statutory interpretation in *Matter of Yajure Hurtado*)).

**D. *Jackson's Detention Violates His Right to Substantive Due Process Because He Is Neither a Flight Risk Nor a Danger to the Community.***

75. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty th[e Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Noncitizens unquestionably have a substantial liberty interest to be free from detention. Because "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception," the government may imprison people as a preventive measure only within strict limits. *Foucha v. Louisiana*, 504 U.S. 71, 83 (1992) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)).

76. Immigration detention is civil and must "bear[] a reasonable relation to the purpose for which the individual [is] [detained]" so that it remains "nonpunitive in purpose and effect." *Zadvydas*, 533 U.S. at 690 (cleaned up); *see also Schall v. Martin*, 467 U.S. 253, 264-69 (1984) (finding detention must be a proportional—not excessive—response to a legitimate state objective).

77. Courts have identified only two legitimate purposes for immigration detention: mitigating flight risk pending removal and preventing danger to the community. *See Zadvydas,* 533 U.S. at 690-91; *Velasco Lopez v. Decker*, 978 F.3d 842, 854 (2d Cir. 2020); *Faure v. Decker*,

No. 15-CV-5128, 2015 WL 6143801, at *3 (S.D.N.Y. Oct. 19, 2015) (ordering release or a bond hearing where there was "no evidence" that the habeas petitioner "poses a danger to the public or would flee during the pendency of the removal proceedings").

78.     Neither purpose is served by Jackson's detention. Respondents have not made any claim that Jackson presents a flight risk or a danger to the community, nor could they. When Jackson was previously released from ORR custody to his sister, *see* Ex. 1, the government came to precisely the opposite conclusion. *See* 8 U.S.C. § 1232(c)(2); 6 U.S.C. § 279(b)(2)(A); *see also Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1177 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018) (confirming that release to a sponsor "reflects a determination by the federal government that the minor is neither dangerous nor a flight risk").

79.     DHS also previously determined that it was appropriate to cancel Jackson's removal proceedings because of his grant of SIJS—yet another indication that it did not believe him to present any risk of flight or danger. *See* Ex. D, Dismissal Order.

80.     Accordingly, the government is not detaining Jackson to serve its legitimate interests in protecting against danger or flight risk. Because his detention bears no "reasonable relation" to the government's interests in preventing flight and danger, *Jackson v. Indiana*, 406 U.S. 715, 738 (1972), this Court should order his release.

**E.     *Jackson's Detention Without an Opportunity to Seek Release from a Neutral Decisionmaker Violates His Right to Procedural Due Process and Necessitates His Release from Civil Immigration Detention.***

81.     Even "[w]hen government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner." *Salerno*, 481 U.S. at 746. *See also, Ceesay v. Kurzdorfer*, No. 25-CV-267-LJV, 2025 WL 1284720 at *10 (W.D.N.Y. May 2, 2025); *Martinez v. McAleenan*, 385 F. Supp. 3d 349, 362-64, 373 (S.D.N.Y. 2019) (finding the detention of a noncitizen without written notice of the reinstatement of a

removal order violated procedural due process and therefore ordering his release and enjoining the government "from attempting to detain Petitioner, while the outcome of his immigration proceedings are pending, so long as he is ably cooperating and participating in his proceeding"); and *Lopez v. Sessions*, No. 18-CV-4189, 2018 WL 2932726 at *11 (S.D.N.Y. June 12, 2018).

82.    "The Supreme Court long ago held that the Fifth Amendment entitles noncitizens to due process in removal proceedings." *Black v. Decker*, 103 F.4th 133, 143 (2d Cir. 2024). The three-factor test articulated by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976) provides the relevant framework "to determine what process is due to noncitizens in removal proceedings," *Black*, 103 F.4th at 147 (collecting cases), and confirms his entitlement to a hearing. The *Mathews* factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

83.    The first *Mathews* factor weighs heavily in Jackson's favor. The Second Circuit has repeatedly held in challenges to immigration detention that "the private interest affected by the official action is the most significant liberty interest there is—the interest in being free from imprisonment." *Black*, 103 F.4th at 151 (quoting *Velasco Lopez*, 978 F.3d at 851). Jackson's ongoing detention directly and substantially implicates this "most significant liberty interest . . . . '[C]ase after case instructs us that in this country liberty is the norm and detention 'is the carefully limited exception.'" *Id*. (quoting *Velasco Lopez*, 978 F.3d at 851 and *United States v. Salerno*, 481 U.S. 739, 755 (1987) (cleaned up)). Like the petitioner in *Velasco Lopez*, the deprivation

Jackson is experiencing "was not the result of a criminal adjudication."  978 F.3d at 851.  Nor is it the result of any flight risk or danger.  *See supra*.

84.    Jackson also has a particularly strong liberty interest in light of (1) his prior release as a UC and (2) his valid grant of SIJS.  Jackson possessed a weighty liberty interest in avoiding re-detention.  *See Young v. Harper*, 520 U.S. 143, 146-47 (1997); *Gagnon v. Scarpelli*, 411 U.S. 778, 781-82 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 482-483 (1972).  In *Morrissey*, the Supreme Court examined the "nature of the interest" that a parolee has in "his continued liberty." 408 U.S. at 481-82.  The Court noted that, "subject to the conditions of his parole, [a parolee] can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life."  *Id*. at 482.  The Court further highlighted that "the parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions."  *Id*.  The Court explained that "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a grievous loss on the parolee and often others."  *Id*.; *see also Hurd v. District of Columbia*, 864 F.3d 671, 683 (D.C. Cir. 2017) ("[A] person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated.").

85.    Numerous courts have since found a similar liberty interest to be held by noncitizens released from detention on bond and have noted that this interest only "grows over time."  *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *5 (N.D. Cal. July 17, 2025); *see also Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); *Jorge M. F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3 (N.D.

Cal. Mar. 1, 2021); *Doe v. Becerra*, No. 25-cv-00647-DJC-DMC, 2025 WL 691664, at *5 (E.D. Cal. March 5, 2025); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019).

86.     Of course, the interest in remaining free is even stronger in a case, like Jackson's, where the government released him from custody without even the need for a bond.  *See Garcia Domingo v. Castro*, No. 1:25-CV-00979-DHU-GJF, 2025 WL 2941217, at *2 (D.N.M. Oct. 15, 2025) (finding that UC's release created protected liberty interest); *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2686866, at *4 (E.D. Cal. Sept. 18, 2025) (same).

87.     Jackson's grant of SIJS—and prior grant of deferred action—only further strengthens his liberty interest.  To be approved for SIJS and deferred action, Jackson had to meet "rigorous eligibility criteria" and show that he merited a favorable exercise of discretion.  *See Osorio*, 893 F.3d at 168.  He was promised that, if he met those requirements, he would be given a meaningful path to LPR status, and eventually citizenship, in this country.  *Id.*  That came with the expectation that he could build a life here without risking arbitrary arrest, detention, and removal that would strip him of the very permanency that Congress intended to provide vulnerable youth like him under SIJS.  As a result, he has "developed the 'substantial connections with this country' that 'go with permanent residence.'"  *Id.* (cleaned up).  And he has an interest in maintaining the life he has built, including his liberty.  *See Santiago v. Noem*, No. EP-25-CV-361-KC, 2025 WL 2792588, at *12 (W.D. Tex. Oct. 2, 2025) (finding that DACA recipients, who like SIJS recipients are permitted "to live, study, and work in the United States without fear of arrest or deportation," necessarily acquire a liberty interest); *Gamez Lira v. Noem*, No. 25-cv-00855-WJ-KK, 2025 WL 2581710, at *3 (D. N.M. Sept. 5, 2025) (finding petitioner "likely possessed a protectable liberty interest after living in the United States for ten years with DACA").

88.     As for the second *Mathews* factor, the erroneous deprivation of Jackson's liberty is the direct result of the insufficient safeguards and procedures used to initiate and continue his detention.  The government has not even attempted to identify the basis for Jackson's detention.  However, to the extent the Respondents assert that Jackson is subject to mandatory detention under Section 1225(b), such detention would be without the right of individualized review.  Section 1225(b), like the mandatory detention at issue in *Black*, "include[s] no mechanism for a detainee's release, nor for individualized review of the need for detention."  103 F.4th at 152.  Such a lack of "procedural protections . . . markedly increase[d] the risk of an erroneous deprivation of Petitioners' private liberty interests."  *Id*.  When evaluating the second *Mathews* prong, "[t]he only interest to be considered . . . is that of the detained individuals—not the government."  *Black*, 103 F.4th at 152.

89.     The fact that the government has already decided Jackson did not present a flight risk or danger, and even joined in the motion to dismiss his removal proceedings, is "irreconcilable with the decision to re-arrest him, absent changed circumstances."  *Lopez*, 2018 WL 2932726, at *11.  In *Lopez,* the court held that due to the lack of process prior to the petitioner's re-arrest, "the risk of erroneous deprivation of Mr. Lopez's liberty interest is manifest."  *Id.*  As such, "Petitioner's re-detention, without prior notice, a showing of changed circumstances, or a meaningful opportunity to respond, does not satisfy the procedural requirements of the Fifth Amendment."  *Id*. at 12.  Indeed, courts across the country have held that individuals in Jackson's position must be given meaningful pre-deprivation process before they can be re-detained.  *See supra* (collecting general re-detention cases); *Garcia Domingo*, 2025 WL 2941217, at *4 (UC re-detention); *R.D.T.M.*, 2025 WL 2686866, at *5 (same); *see also Guillermo M.R.*, 2025 WL 1983677, at *7 (noting that the court could not "identify any other context in which government

agents could permissibly take someone who has been released by a judge, lock up that person, and have no hearing either beforehand or promptly thereafter"); *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (noting that the Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property") (emphasis in original); *Mata Velasquez*, 2025 WL 1953796 at **11-16.

90.     The third *Mathews* prong—the public interest—also weighs in Jackson's favor.  As explained *supra*, the government has no legitimate interest in detaining anyone who is not a flight risk or a danger to the community.  *Zadvydas*, 533 U.S. at 690.  The government has already determined that Jackson was neither a flight risk nor a danger, and it has not indicated that there are any changed circumstances that could justify his detention.  Moreover, "there is no public interest in the perpetuation of unlawful agency action," *R.J. Reynolds Vapor Co. v. Food & Drug Admin.*, 65 F.4th 182, 195 (5th Cir. 2023), but a "substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations,'" *Texas v. United States*, 40 F.4th 205, 229 (5th Cir. 2022) (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)).  It also bears noting that the "fiscal and administrative burdens" that would be imposed by Jackson's release from custody, unless and until a pre-deprivation hearing is provided, are nonexistent in this case.  *See Mathews*, 424 U.S. at 334-35.

91.     Ultimately, then, because "[t]he release of [Jackson] to his [sister] was pursuant to a process that involved a determination that he was neither a danger to himself or others and that it was appropriate for him to reside with her.  Petitioner's re-detention, without prior notice, a showing of changed circumstances, or a meaningful opportunity to respond, does not satisfy the procedural requirements of the Fifth Amendment."  *Lopez*, 2018 WL 2932726, at *12.

**F.**    ***The Unexplained Termination of Jackson's Deferred Action and EAD Was Arbitrary and Capricious.***

92.    USCIS's unexplained termination of Jackson's deferred action and EAD was arbitrary and capricious because USCIS has not proffered any explanation, let alone a non-arbitrary explanation, for the termination.

93.    The Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, provides that courts "shall . . . hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Agency decisions—even discretionary ones—"must be based on non-arbitrary, 'relevant factors.'" *Judulang v. Holder*, 565 U.S. 42, 55 (2011) (holding that BIA's approach for determining whether non-citizen was eligible for discretionary relief from deportation was arbitrary and capricious because the decision-making process focused on "matters irrelevant to the alien's fitness to reside in this country.") Courts play a "role, and an important one, in ensuring that agencies have engaged in reasoned decision making." *Id*. at 53. "When reviewing an agency action, [courts] must assess, among other matters, 'whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Id*. (citation and internal punctuation omitted).

94.    Similarly, in *Inland Empire-Immigrant Youth Collective v. Duke*, the U.S. District Court for the Central District of California applied *Judulang* to assess whether USCIS had acted arbitrarily and capriciously by unilaterally terminating the DACA grants of noncitizens issued NTAs for lack of lawful immigration status. No. EDCV172048PSGSHKX, 2017 WL 5900061, at *6 (C.D. Cal. Nov. 20, 2017). The court stressed that this discretionary benefit could not be terminated based on irrelevant factors and concluded that termination based on an NTA alone— when DACA was "specifically designed for persons without lawful immigration status"—was

"arbitrary and irrational." *Id.* (emphasis in original) (granting preliminary injunction to individual plaintiff). Further, the court concluded that USCIS's failure to provide any good reasons for the abrupt change in its position regarding discretionary grants of DACA was also arbitrary and capricious. *Id*; *see also Inland Empire-Immigrant Youth Collective v. Nielsen*, No. EDCV172048PSGSHKX, 2018 WL 1061408, at *17-18 (C.D. Cal. Feb. 26, 2018) (granting class-wide preliminary injunction); *id.*, 2018 WL 4998230, at *17-18 (C.D. Cal. Apr. 19, 2018) (denying government's motion to dismiss).

95. Here, USCIS has terminated Jackson's deferred action and employment without providing any explanation for the decision, and therefore the termination is arbitrary and capricious. Even assuming that USCIS terminated Jackson's deferred action because it intends to pursue removal proceedings against him, that would be arbitrary and capricious because the only basis for doing so would be the fact that the backlog has precluded him from adjusting his status and therefore Respondents believe he lacks immigration status and is thus removable.[5] Because lack of lawful immigration status is the core justification for every grant of deferred action, it cannot provide a reasoned basis for terminating that deferred action, absent some change in circumstance. *See Inland Empire-Immigrant Youth Collective*, 2017 WL 5900061, at *6-7.

96. Further, in terminating Jackson's deferred action and employment authorization, USCIS departed from its prior position without providing any "reasoned analysis for the change," which also violates the APA. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463

---

[5] Jackson does not concede that he lacks status or is generally removable while he waits for a chance to become an LPR, given that his SIJS renders him "a successful applicant as a ward of the United States with the approval of both state and federal authorities," and that there is "a congressional intent to assist a limited group of abused children to remain safely in the country with a means to apply for LPR status." *Osorio-Martinez*, 893 F.3d at 168 (quoting *Garcia v. Holder*, 659 F.3d 1261, 1271 (9th Cir. 2011)).

U.S. 29, 42 (1983); *see also* 5 U.S.C. § 706(2).  If an agency chooses to depart from its prior

position, it "is obligated to supply a reasoned analysis for the change." *State Farm*, 463 U.S. at 42;

*see also FCC v. Fox Television Stations, Inc*., 556 U.S. 502, 515 (2009) ("[T]he agency must show

that there are good reasons for the new policy."); *Food & Drug Admin. v. Wages & White Lion*

*Invs., L.L.C.*, 604 U.S. 542, 569-70 (2025) (confirming that "when an agency 'acts inconsistent[ly]

with an 'earlier position,'" it must "offer 'good reasons for the new policy'") (citations omitted).

97.    Here, Jackson's grant of deferred action was intended to last until November 2028.

*See* Ex, C, Approval Notice.  However, USCIS abruptly changed course, terminating Jackson's

deferred action—barely a year after granting it—without any explanation whatsoever as to how

any relevant factors had changed, much less providing "good reasons" for the agency's about-face.

*Fox Television*, 556 U.S. at 515; *see also Inland Empire-Immigrant Youth Collective*, 2017 WL

5900061, at *7 (finding that "'USCIS's one-sentence explanation' regarding the termination of

plaintiff's DACA after previously determining that he was eligible for this benefit, "fails to provide

'good reasons' for the agency's change in position, as required by the APA").

### G.    The Unexplained Termination of Jackson's Deferred Action and EAD Without Notice or an Opportunity to be Heard Violates Jackson's Procedural Due Process Rights.

98.    Separate and apart from the arbitrary and capricious nature of USCIS's actions, the

termination of Jackson's deferred action and employment authorization also violates his right to

procedural due process under the Fifth Amendment.

99.    Jackson was granted an EAD and deferred action in November 2024, which has

allowed him to work and live in the United States without fear of immigration prosecution, and

thus, both the EAD and deferred action are protected property interests.  USCIS stripped Jackson

of these property interests without providing any prior notice, a reasoned explanation for its

decision, or an opportunity to present arguments and evidence to demonstrate that he remains eligible for deferred action.

100.    These protected property interests cannot be revoked without notice an opportunity to be heard—or some other procedure sufficient to protect Jackson's rights under the *Matthews* balancing test.  424 U.S. at 335.

101.    Applying the *Matthews* factors in this context, they weigh in favor of providing Jackson with some additional process—including notice and an opportunity to be heard—before divesting him of his deferred action and employment authorization.  See *Mathews*, 424 U.S. at 335. (outlining the following three factors for procedural due process analysis (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail".)

102.    *First*, regardless of whether an individual has a claim of entitlement to a benefit before it is granted, once an important benefit is conferred, the recipient has a protected property interest sufficient to require a fair process before the government may take that benefit away. *See Bell v. Burson*, 402 U.S. 535, 539 (1971) (holding that,"[o]nce [driver's] licenses are issued, . . . their continued possession may become essential in the pursuit of a livelihood," such that they cannot "be taken away without" due process); *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011) (recognizing that taxi drivers have a protected property interest in the continued possession of their operating licenses, such that suspending licenses without a hearing violated due process); *Singh v. Bardini*, No. 09-cv-3382, 2010 WL 308807, at *7 (N.D. Cal. Jan. 19, 2010) ("Even if there is no

constitutional right to be granted asylum, that does not mean that, once granted, asylum status can be taken away without any due process protections.") (internal citation omitted); *Ramirez Medina v. U.S. Dep't of Homeland Sec.*, No. C17–0218RSM, 2017 WL 5176720, at *8 (W.D. Wash. Nov. 8, 2017) (rejecting argument that no process is due to DACA recipients prior to termination, as "benefits have already been conferred").

103.    Here, "USCIS . . . established a standardized process for reviewing [SIJS] applications, which would—if successful—result in deferred action for a defined period and the ability to seek work authorization.  Thus, much like DACA, SIJS-DA was 'more than a non-enforcement policy'—it was a 'program for conferring affirmative immigration relief.'" *A.C.R. v. Noem*, slip op. at 18, No. 25-CV-3962 (Nov. 19, 2025), ECF No. 60 (quoting *Regents*, 591 U.S. at 18–19).  "DHS's decision to grant deferred action" is thus "an affirmative act of approval" that "confer[s] affirmative immigration relief," *Regents*, 591 U.S. at 18, including the ability to seek lawful employment.  Accordingly, the "grant of [deferred action] constitutes a conferred benefit that requires procedural safeguards before it can be terminated." *Inland Empire - Immigrant Youth Collective*, 2018 WL 4998230 at *19-20.  Further, in the face of Respondent's position that Jackson is still subject to removal despite having obtained SIJS, deferred action is essential to ensuring that he can remain in the United States and pursue LPR status as Congress intended.  Similarly, employment authorization allows him to earn a livelihood and support himself.  USCIS's reversal of its previous decision that Jackson was eligible for deferred action inflicts precisely the kind of "serious loss" that requires due process protections. *Mathews*, 424 U.S. at 328.

104.    *Second*, the risk of erroneous deprivation due to the failure to provide appropriate procedural protections is high.  It is undisputed that USCIS has not given Jackson any opportunity to be heard regarding the termination of his deferred action.  As to the termination of his EAD,

Jackson was provided 15-days' notice that it would be automatically revoked, but he has not been given a true pathway for challenging the determination. The notice provides that "[b]y operation of this notice, your unexpired deferred action-based employment authorization will be revoked 15 days from the date of this notice unless you submit countervailing evidence that you continue to have deferred action." Ex. I, Notice of Termination at 2. "The essence of due process is the requirement that a person in jeopardy of serious loss be given notice of the case against him" and "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 332, 333 (citations omitted); see also *id*. ("The 'right to be heard before being condemned to suffer grievous loss of any kind . . . is a principle basic to our society.'"); *Hilfiger v. Alger*, 582 F. Supp. 2d 418, 425-26 (W.D.N.Y. 2008), *aff'd*, 87 F. App'x 111 (2d Cir. 2010) (confirming that "due process typically requires predeprivation notice and an opportunity to be heard"). Jackson was not afforded any advance notice or any explanation of the deprivation of his deferred action, nor any meaningful right to be heard as to the revocation of his employment authorization.

105.     *Third*, the burden on UCIS in providing the additional procedural protections (or, in fact, any procedural protections) would not be unduly burdensome. Indeed, USCIS already provides for advance notice and the opportunity to be heard with respect to the termination of other forms of deferred action. *See* 8 C.F.R. § 236.23(d)(1) (indicating that "USCIS will provide a Notice of Intent to Terminate ["NOIT"] and an opportunity to respond prior to terminating a grant of [DACA]," unless the individual is convicted of certain "national security-related" or "egregious public safety" offenses). This reinforces both that the value of such safeguards is high, and that providing such limited process would not place undue fiscal or administrative burdens on the government. Although it may impose "some costs in time, effort, and expense" to provide pre-

deprivation notice and an opportunity to be heard, "these rather ordinary costs cannot outweigh the constitutional right" to due process. *Fuentes v. Shevin*, 407 U.S. 67, 92n.22 (1972).

106.    For these reasons, USCIS's termination of Jackson's deferred action and employment authorization without any meaningful process runs afoul of his Fifth Amendment procedural due process rights.

## CAUSES OF ACTION

### FIRST CLAIM

**Violation of the INA, 8 U.S.C. § 1226(a) Based on Jackson's Unlawful Detention**

107.    Jackson repeats and re-alleges the allegations contained in all preceding paragraphs of this Petition-Complaint as if fully set forth herein.

108.    Under 8 U.S.C. § 1226 and federal immigration regulations, the ICE agents who arrested Jackson were required to give him an opportunity to show that he was entitled to release because he posed neither a danger to the community nor a flight risk.

109.    The ICE agents who detained petitioner did not provide him with an opportunity to show that he was entitled to release because he posed neither a danger to the community nor a flight risk.

110.    Jackson has no adequate remedy at law, as he seeks immediate release and Respondents have refused to release him despite several requests.

111.    For the foregoing reasons, Respondents' detention of Jackson violated the INA.

112.    Further, Jackson's detention is governed by 8 U.S.C. § 1226(a), not 8 U.S.C. § 1225(b)(2)(A), given his prior UC processing, valid SIJS grant, and four years of continuous presence in the United States.    Thus, to the extent Respondents are applying 8 U.S.C. § 1225(b)(2)(A) to Jackson, this further violates the INA.

**SECOND CLAIM**

**Violation of the Due Process Clause of the Fifth Amendment to the United States Constitution (Substantive Due Process) Based on Jackson's Unlawful Detention**

113.    Jackson repeats and re-alleges the allegations contained in all preceding paragraphs of this Petition-Complaint as if fully set forth herein.

114.    In order to satisfy the substantive due process requirements of the Fifth Amendment, a noncitizen's detention must be tied to some lawful purpose, which does not exist when the individual is not a flight risk or a danger to the community.  *Zadvydas*, 533 U.S. at 690.

115.    Respondents have not offered any explanation for Jackson's detention, nor is there any sound explanation.  Jackson poses no flight risk or danger to the community.

116.    For the foregoing reasons, Respondents' detention of Jackson violated his substantive due process rights protected by the Due Process Clause of the Fifth Amendment to the United States Constitution.

**THIRD CLAIM**

**Violation of the Due Process Clause of the Fifth Amendment to the United States Constitution (Procedural Due Process) Based on Jackson's Unlawful Detention**

117.    Jackson repeats and re-alleges the allegations contained in all preceding paragraphs of this Petition-Complaint as if fully set forth herein.

118.    The procedural due process guarantees of the Fifth Amendment ensure that noncitizens cannot be deprived of liberty or property interests without due process of law.  *Barrows v. Burwell*, 777 F.3d 106, 113 (2d Cir. 2015) (quoting *Mathews*, 424 U.S. at 332).  Here, the government made the reasoned decision to release Jackson from ORR custody in August 2021. Since then, he has lived at liberty for several years, successfully obtaining SIJS, deferred action, employment authorization, and the dismissal of his removal proceedings.

119.    Jackson was detained, and is continuing to be detained, without cause and without an individualized determination as to whether he presents a danger to the community or a flight risk.

120.    Respondents have not, from the initial date of Jackson's detention to the date of this Petition, provided him with either notice or an opportunity to challenge his detention.

121.    Respondents violated Jackson's right to procedural due process by arresting and detaining him on November 5, 2025, without providing adequate procedural protections before (or after) the resultant deprivation of his liberty.

122.    Jackson has no adequate remedy at law, as he seeks immediate release and Respondents have refused to release him.

123.    For the foregoing reasons, Respondents' detention of Jackson violated his procedural due process rights protected by the Due Process Clause of the Fifth Amendment to the United States Constitution.

## FOURTH CLAIM

**Violation of the Administrative Procedure Act, 5 U.S.C. §§ 702, 706 Based on Jackson's Unlawful Detention**

124.    Jackson repeats and re-alleges the allegations contained in all preceding paragraphs of this Petition-Complaint as if fully set forth herein.

125.    Under the Administrative Procedures Act, "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review."  5 U.S.C. § 704.

126.    Further, the Administrative Procedure Act provides that a court "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be-(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "unsupported by substantial evidence."  5 U.S.C. § 706(2)(A), (E).  Further, when the government has promulgated

"[r]egulations with the force and effect of law," those regulations "supplement the bare bones" of federal statutes, such that the agencies are bound to follow their own "existing valid regulations." *United States ex rel. Accardi Shaugnessy*, 347 U.S. 260, 266, 268 (1954). The *Accardi* doctrine also obligates agencies to comply with procedures it outlines in its internal manuals. *See Morton v. Ruiz*, 415 U.S. 199, 235 (1974) (finding that an agency is obligated to comply with procedural rules outlined in its internal manual).

127.    Respondents' unilateral decisions to arrest and detain Jackson, without explanation or any opportunity for an individualized determination regarding release, are arbitrary, capricious, unsupported by substantial evidence, and an abuse of discretion.

128.    Further, Respondents have not offered any permissible statutory purpose for Jackson's detention, and his detention is not rationally related to any immigration purpose. No circumstances have changed since Respondents' prior determination, at the time they released him from ORR custody, that Jackson presented no risk of flight or danger.

129.    Jackson has no adequate remedy at law, as he seeks immediate release and Respondents have refused to release him.

130.    By detaining Petitioner without explanation, or any consideration of his individualized facts and circumstances, Respondents have violated the Administrative Procedure Act.

## FIFTH CLAIM
### Violation of the Administrative Procedure Act, 5 U.S.C. §§ 702, 706 Based on the Unlawful Termination of Jackson's Deferred Action

131.    Jackson repeats and re-alleges the allegations contained in all preceding paragraphs of this Petition-Complaint as if fully set forth herein.

132.    Further, the Administrative Procedure Act provides that a court "shall . . . hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  The reviewing court "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be-(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "unsupported by substantial evidence."  5 U.S.C. § 706(2)(A), (E).

133.    Under the Administrative Procedure Act, "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review."  5 U.S.C. § 704.

134.    USCIS's unexplained termination of deferred action and employment authorization is arbitrary and capricious in violation of the APA for multiple reasons, including that (1) it does not provide any good reason for the change in the agency's position as to Jackson's deferred action and (2) it violates the agency's own binding policies, which affect individual rights, and which require USCIS to make an individualized assessment of relevant discretionary factors before terminating a youth's SIJS deferred action.

### SIXTH CLAIM
### Violation of the Due Process Clause of the Fifth Amendment to the United States Constitution (Procedural Due Process) Based on the Unlawful Termination of Jackson's Deferred Action

135.    Jackson repeats and re-alleges the allegations contained in all preceding paragraphs of this Petition-Complaint as if fully set forth herein.

136.    USCIS's termination of Jackson's deferred action and employment authorization violates his right to procedural due process under the Fifth Amendment.

137.    Once deferred action and corresponding employment authorization have been granted, they cannot be taken away without adequate process.

138.    Here, Respondents failed to provide any meaningful process upon termination of his deferred action and employment authorization.  That termination was without prior notice, reasoned explanation, or any opportunity to respond and present arguments and evidence to demonstrate that he continues to be eligible for and warrants deferred action.

139.    The government also failed to provide for any reinstatement procedure in cases where the termination decision was in error.  This does not constitute adequate process.

**SEVENTH CLAIM**
**Release Pending Adjudication of Jackson's Habeas Petition**

140.    Jackson repeats and re-alleges the allegations contained in all preceding paragraphs of this Petition-Complaint as if fully set forth herein.

141.    Pursuant to *Mapp v. Reno*, this Court has the "inherent authority" to set bail pending the adjudication of a habeas petition when the petition has raised (1) substantial claims and (2) extraordinary circumstances that (3) "make the grant of bail necessary to make the habeas remedy effective."  241 F.3d 221, 226 (2d Cir. 2001).

142.    Jackson has asserted several constitutional and statutory bases to challenge his detention.

143.    Jackson has demonstrated extraordinary circumstances thereby making him eligible for bond.

144.    Therefore, Jackson requests immediate release pending adjudication of the instant petition.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Petitioner respectfully requests that this Court:

a.    Assume jurisdiction over this matter;

b.    Preclude Respondents from transferring Jackson away from the jurisdiction of this District or from the United States pending the conclusion of these proceedings pursuant to the All Writs Act, or other applicable authority;

c.    Declare that Jackson's arrest and detention violate the Due Process Clause of the Fifth Amendment and the Immigration and Nationality Act and implementing regulations;

d.    Issue a Writ of Habeas Corpus ordering Respondents to immediately release Petitioner from custody without restraints on his liberty beyond those that existed prior to his unlawful re-detention;

e.    Order Respondents to show cause why the writ should not be granted within three days, and set a hearing on this Petition within five days of the return date, as required by 28 U.S.C. § 2243;

f.    Order that Respondents cannot re-detain Petitioner without a pre-deprivation hearing before this Court where the government bears the burden of justifying re-detention by clear and convincing evidence;

g.    Vacate the unlawful termination of Jackson's deferred action and employment authorization;

h.    Order that Respondents cannot terminate Jackson's deferred action without first providing reasonable notice of intent to terminate, a reasoned explanation, and an opportunity to submit arguments and evidence in response;

i.    In the alternative, order temporary reinstatement of Jackson's deferred action pending a fair procedure—including reasonable notice of intent to terminate, a

reasoned explanation, and an opportunity to submit arguments and evidence in response;

j.      Award reasonable attorney's fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412; and

k.      Grant such further relief as this Court deems just and proper.

Respectfully submitted,

**LOWENSTEIN SANDLER LLP**

Dated: November 20, 2025

_s/ Michael A. Kaplan_
Michael A. Kaplan
Markiana J. Julceus (_admission pending_)
Erica Mannix (_admission pending_)
1251 Avenue of the Americas
New York, NY 10020
(212) 262-6700
mkaplan@lowenstein.com
mjulceus@lowenstein.com
emannix@lowenstein.com

_Attorneys for Petitioner-Plaintiff_

## 28 U.S.C. § 2242 VERIFICATION STATEMENT

I am submitting this verification on behalf of the Petitioner because I am one of the Petitioner's attorneys.  I have discussed with the Petitioner the events described in this Petition and Complaint.  On the basis of those discussions, I hereby verify that the statements made in this Petition and Complaint are true and correct to the best of my knowledge.

DATED:   November 20, 2025

s/ *Markiana J. Julceus*
Markiana J. Julceus
1251 Avenue of the Americas
New York, NY 10020
(212) 262-6700
mjulceus@lowenstein.com

*Attorneys for Petitioner-Plaintiff*

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *SEE INSTRUCTIONS ON NE T PAGE OF THIS FORM.*

## I. (a) PLAINTIFFS
D r R

## DEFENDANTS
M r    r d   dd    r

**(b)** County of Residence of First Listed Plaintiff
*E CEPT IN U.S. PLAINTIFF CASES*

County of Residence of First Listed Defendant
*IN U.S. PLAINTIFF CASES ONLY*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *Firm Name, Address, and Telephone Number*
d r
r    r

Attorneys *If Known*

## II. BASIS OF JURISDICTION *Place an  in One Box Only*

- [ ] 1 U.S. Government Plaintiff
- [ ] 3 Federal uestion
  *U.S. Government Not a Party*
- [x] 2 U.S. Government Defendant
- [ ] 4 Diversity
  *Indicate Citizenship of Parties in Item III*

## III. CITI ENSHIP OF PRINCIPAL PARTIES *Place an  in One Box for Plaintiff and One Box for Defendant*
*For Diversity Cases Only*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *Place an  in One Box Only*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 ui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | | | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus** | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other** | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *Place an  in One Box Only*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *specify*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:
r    r    d    d    r    d    r    r    d    r

## VII. REQUESTED IN COMPLAINT
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND

CHECK YES only if demanded in complaint:
JURY DEMAND  [ ] Yes  [x] No

## VIII. RELATED CASE(S) IF ANY
*See instructions*
JUDGE _____    DOCKET NUMBER _____

DATE

SIGNATURE OF ATTORNEY OF RECORD
M

**FOR OFFICE USE ONLY**

RECEIPT _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **Count of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorne s.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below **NOTE federal uestion actions take precedence over diversit cases.**)

**III.** **Residence (citi enship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversit .** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Re uested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related cases, if any. If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorne Signature.** Date and sign the civil cover sheet.

# EXHIBIT A

OMB Control No: 0970-0552
Expiration Date: 03/31/2022



# U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES (HHS)
## OFFICE OF REFUGEE RESETTLEMENT (ORR)
### DIVISION OF UNACCOMPANIED CHILDREN OPERATIONS (DUCO)
## VERIFICATION OF RELEASE

**VERIFICATION OF RELEASE**

| Name of Minor: | Jackson Barillas Resinos | Aliases (if any): | Jackson Daniel Barillas Resinos |
| --- | --- | --- | --- |
| Minor's Date of Birth: | | Minor's A#: | |

The Office of Refugee Resettlement (ORR) has released the above named minor from Federal custody pursuant to section 462 of the Homeland Security Act of 2002 and section 235 of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 to the care of:

| Name of Sponsor: | |
| --- | --- |
| Aliases (if any): | |
| Address: | |
| City: | |
| State: | Zip Code: |
| Telephone#: | |
| Relationship to Child: | Sister |

## ACKNOWLEDGEMENT OF THE SPONSOR CARE AGREEMENT

The above named sponsor has agreed to the provisions set forth in the *Sponsor Care Agreement,* pertaining to the minor's care, safety, and well-being, and the sponsor's responsibility for ensuring the minor's presence at all future proceedings before the Department of Homeland Security and the Department of Justice/Executive Office for Immigration Review (EOIR).

## FOR INTERNAL USE ONLY

| Name ORR care provider Facility | The Villages |
| --- | --- |
| Date | 09/12/2021 |

THE PAPERWORK REDUCTION ACT OF 1995 (Pub. L. 104.13) Public reporting burden for this collection of information is estimated to average .10/hour per response, including the time for reviewing instructions, gathering and maintaining the data needed, and reviewing the collection of information. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.

Jackson     Enw Jun 9/2/21     9/2/21

# EXHIBIT B

 

DEPARTMENT OF HOMELAND SECURITY
## NOTICE TO APPEAR

| In removal proceedings under section 240 of the Immigration and Nationality Act: | | |
|---|---|---|
| Subject ID:372248264 | FINS #:1311741142 | |
| | DOB: ▇ | File No: ▇▇▇▇ |
| In the Matter of: | | Event No▇ |
| | JACKSON  BARILLAS-RESINOS | |
| Respondent: | | currently residing at: |

_____
(Number, street, city, state and ZIP code)                    (Area code and phone number)

☐ You are an arriving alien.

☒ You are an alien present in the United States who has not been admitted or paroled.

☐ You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that you:

1. You are not a citizen or national of the United States;
2. You are a native of HONDURAS and a citizen of HONDURAS ;
3. You arrived in the United States at or near HIDALGO,  TX , on or about August 14,
2021 ;
4. You were not then admitted or paroled after inspection by an Immigration Officer.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended, in that you are an
alien present in the United States without being admitted or paroled, or who arrived in
the United States at any time or place other than as designated by the Attorney General.

☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.

☐ Section 235(b)(1) order was vacated pursuant to:  ☐ 8CFR 208.30   ☐ 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

2009 West Jefferson Avenue, Suite 300   Harlingen TX US 78550
_____
(Complete Address of Immigration Court, including Room Number, if any)

on  a date to be set  at  a time to be  to show why you should not be removed from the United States based on the
   (Date)        (Time)

charge(s) set forth above.      MATTHEW RUCKER              ACTING PATROL AGENT IN CHARGE
_____
(Signature and Title of Issuing Officer) (Sign in ink)

Date: August 14, 2021              DONNA, TEXAS
_____
(City and State)

DHS Form I-862 (2/20)                                              Page 1 of 3

### Notice to Respondent

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are in removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 1003.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents that you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing. At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear, including that you are inadmissible or removable. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge. You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of voluntary departure. You will be given a reasonable opportunity to make any such application to the immigration judge.

**One-Year Asylum Application Deadline:** If you believe you may be eligible for asylum, you must file a Form I-589, Application for Asylum and for Withholding of Removal. The Form I-589, Instructions, and information on where to file the Form can be found at **www.uscis.gov/i-589**. Failure to file the Form I-589 within one year of arrival may bar you from eligibility to apply for asylum pursuant to section 208(a)(2)(B) of the Immigration and Nationality Act.

**Failure to appear:** You are required to provide the Department of Homeland Security (DHS), in writing, with your full mailing address and telephone number. You must notify the Immigration Court and the DHS immediately should you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to your local DHS office, listed on the internet at **http://www.ice.gov/contact/ero**, as directed by the DHS and required by statute and regulation. Immigration regulations at 8 CFR 1241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United States and for ten years after your departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Immigration and Nationality Act.

**U.S. Citizenship Claims:** If you believe you are a United States citizen, please advise the DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903.

**Sensitive locations:** To the extent that an enforcement action leading to a removal proceeding was taken against Respondent at a location described in 8 U.S.C. § 1229(e)(1), such action complied with 8 U.S.C. § 1367.

---

### Request for Prompt Hearing

To expedite a determination in my case, I request this Notice to Appear be filed with the Executive Office for Immigration Review as soon as possible. I waive my right to a 10-day period prior to appearing before an immigration judge and request my hearing be scheduled.

Before:

_____
(Signature of Respondent) (Sign in ink)

BORDER PATROL AGENT

_____
(Signature and Title of Immigration Officer) (Sign in ink)

Date: 08/14/2021

---

### Certificate of Service

This Notice To Appear was served on the respondent by me on ___August 14, 2021___ , in the following manner and in compliance with section 239(a)(1) of the Act.

☒ in person   ☐ by certified mail, returned receipt # _____ requested   ☐ by regular mail
☐ Attached is a credible fear worksheet.
☒ Attached is a list of ~~Subject Refused to~~ organizations which provide free legal services.

The alien was provided oral notice in the **Sign. Witnessed by:** SPANISH language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

_____
(Signature of Respondent if Personally Served) (Sign in ink)

DANIEL AZUA, BORDER PATROL AGENT
_____
(Signature and Title of officer) (Sign in ink)

**Privacy Act Statement**

**Authority:**
The Department of Homeland Security through U.S. Immigration and Customs Enforcement (ICE), U.S Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (USCIS) are authorized to collect the information requested on this form pursuant to Sections 103, 237, 239, 240, and 290 of the Immigration and Nationality Act (INA), as amended (8 U.S.C. 1103, 1229, 1229a, and 1360), and the regulations issued pursuant thereto.

**Purpose:**
You are being asked to sign and date this Notice to Appear (NTA) as an acknowledgement of personal receipt of this notice. This notice, when filed with the U.S. Department of Justice's (DOJ) Executive Office for Immigration Review (EOIR), initiates removal proceedings. The NTA contains information regarding the nature of the proceedings against you, the legal authority under which proceedings are conducted, the acts or conduct alleged against you to be in violation of law, the charges against you, and the statutory provisions alleged to have been violated. The NTA also includes information about the conduct of the removal hearing, your right to representation at no expense to the government, the requirement to inform EOIR of any change in address, the consequences for failing to appear, and that generally, if you wish to apply for asylum, you must do so within one year of your arrival in the United States. If you choose to sign and date the NTA, that information will be used to confirm that you received it, and for recordkeeping.

**Routine Uses:**
For United States Citizens, Lawful Permanent Residents, or individuals whose records are covered by the Judicial Redress Act of 2015 (5 U.S.C. § 552a note), your information may be disclosed in accordance with the Privacy Act of 1974, 5 U.S.C. § 552a(b), including pursuant to the routine uses published in the following DHS systems of records notices (SORN): DHS/USCIS/ICE/CBP-001 Alien File, Index, and National File Tracking System of Records, DHS/USCIS-007 Benefit Information System, DHS/ICE-011 Criminal Arrest Records and Immigration Enforcement Records (CARIER), and DHS/ICE-003 General Counsel Electronic Management System (GEMS), and DHS/CBP-023 Border Patrol Enforcement Records (BPER). These SORNs can be viewed at https://www.dhs.gov/system-records-notices-sorns. When disclosed to the DOJ's EOIR for immigration proceedings, this information that is maintained and used by DOJ is covered by the following DOJ SORN: EOIR-001, Records and Management Information System, or any updated or successor SORN, which can be viewed at https://www.justice.gov/opcl/doj-systems-records. Further, your information may be disclosed pursuant to routine uses described in the abovementioned DHS SORNs or DOJ EOIR SORN to federal, state, local, tribal, territorial, and foreign law enforcement agencies for enforcement, investigatory, litigation, or other similar purposes.

For all others, as appropriate under United States law and DHS policy, the information you provide may be shared internally within DHS, as well as with federal, state, local, tribal, territorial, and foreign law enforcement; other government agencies; and other parties for enforcement, investigatory, litigation, or other similar purposes.

**Disclosure:**
Providing your signature and the date of your signature is voluntary. There are no effects on you for not providing your signature and date; however, removal proceedings may continue notwithstanding the failure or refusal to provide this information.

# EXHIBIT C

U.S. Department of Homeland Security

# Warrant for Arrest of Alien

FINS #:1311741142

File No. ▓▓▓▓▓▓▓
Event No:MCS2108001038
Date: **August 14, 2021**

**To any officer delegated authority pursuant to Section 287 of the Immigration and Nationality Act:**

From evidence submitted to me, it appears that:

**JACKSON  BARILLAS-RESINOS**
_____
(Full name of alien)

an alien who entered the United States at or near _____**HIDALGO, TEXAS**_____ on
(Port)

**August 14, 2021**
_____ is within the country in violation of the immigration laws and is
(Date)

therefore liable to being taken into custody as authorized by section 236 of the Immigration and Nationality Act.

By virtue of the authority vested in me by the immigration laws of the United States and the regulations issued pursuant thereto, I command you to take the above-named alien into custody for proceedings in accordance with the applicable provisions of the immigration laws and regulations.

_____
(Signature of Designated Immigration Officer)
**MATTHEW  RUCKER**
-----------------------------------------------------------
(Print name of Designated Immigration Officer)

**ACTING  PATROL  AGENT  IN  CHARGE**
-----------------------------------------------------------
(Title)

---

### Certificate of Service

Served by me at _____**DONNA, TEXAS**_____ on **August 14, 2021** at **10:38 AM** .

I certify that following such service, the alien was advised concerning his or her right to counsel and was furnished a copy of this warrant.

**DANIEL  AŽUA**
_____
(Signature of officer serving warrant)

**BORDER  PATROL  AGENT**
-----------------------------------------------------------
(Title of officer serving warrant)

Form I-200 (Rev, 08/01/07) N

# EXHIBIT D



## THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

| | | Case Type I360 - PETITION FOR AMERASIAN, WIDOWER, OR SPECIAL IMMIGRANT |
|---|---|---|
| **Received Date** 08/12/2024 | **Priority Date** 08/12/2024 | **Petitioner** BARILLAS RESINOS, JACKSON DANIEL |
| **Notice Date** 11/07/2024 | **Page** 1 of 1 | **Beneficiary** BARILLAS RESINOS, JACKSON DANIEL |

JACKSON DANIEL BARILLAS RESINOS
c/o MARKIANA JULCEUS- LOWENSTEIN SANDL
ONE LOWENSTEIN DRIVE
ROSELAND  NJ  07068

Notice Type:  Approval Notice
Class: SL6
Section:  Special Immigrant-Juvenile

We have mailed an official notice about this case (and any relevant documentation) according to the mailing preferences you chose on Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative. **This is a courtesy copy, not the official notice.**

**What the Official Notice Said**

I-797 Approval Notice for **Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant** with Deferred Action.

USCIS has approved the above petition.

**Grant of Deferred Action:**

Your **Form I-360** petition has been approved, but you do not yet have a visa available to file an application for adjustment of status. USCIS has determined that you warrant a favorable exercise of discretion to receive deferred action. As a result, you have been placed in deferred action and you may be issued an employment authorization document. Deferred action is an act of administrative convenience to the government which gives some cases lower priority for removal from the United States for a specified period of time.

Your grant of deferred action will remain in effect for a period of four years from the date of this notice unless terminated earlier by USCIS.

Pursuant to 8 CFR Sec. 274a.12(c)(14), a noncitizen with approved deferred action is eligible to apply for employment authorization with the appropriate fee. If you would like to apply for employment authorization, you must properly file Form I-765, Application for Employment Authorization, and enter eligibility category (c)(14). You will receive separate correspondence regarding the adjudication of your Form I-765 once it is filed.

If you are represented by an attorney, all further correspondence should be accompanied by Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative.

USCIS will notify you separately about any other cases you have filed.

**This form is not a visa, nor may you use it in place of a visa.**

**This form does not constitute employment authorization, nor may you use it in place of an Employment Authorization Document.**

Please see the additional information on the back. You will be notified separately about any other cases you filed.

USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online.

National Benefits Center
U.S. CITIZENSHIP & IMMIGRATION SVC
P.O. Box 648003
Lee's Summit MO  64002

USCIS Contact Center: www.uscis.gov/contactcenter



If this is an interview or biometrics appointment notice, please see the back of this notice for important information.          Form I-797C   10/13/21

# EXHIBIT E



**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**NEWARK IMMIGRATION COURT**

Respondent Name:

    BARILLAS RESINOS, JACKSON

To:

    Julceus, Markiana J
    1 Lowenstein Dr
    Roseland, NJ 07068

A-Number:

    ██████████

Riders:

In Removal Proceedings
Initiated by the Department of Homeland Security
Date:
02/17/2025

**ORDER ON MOTION TO DISMISS**

☑ The Respondent ☑ the Department of Homeland Security ☑ the parties jointly has/have filed a motion to dismiss these proceedings under 8 CFR 1239.2(c). The moving party has given notice of the motion to the non-moving party and the court has provided the non-moving party with an opportunity to respond. The motion is ☐ opposed ☐ unopposed.

After considering the facts and circumstances, the immigration court orders that the motion to dismiss is:

☑ Granted without prejudice
☐ Denied

Further explanation:

IT IS SO ORDERED.

Immigration Judge: CHENG, DAVID 02/17/2025

## Certificate of Service

This document was served:

Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service | [ U ] Address Unavailable

To: [ ] Noncitizen | [ ] Noncitizen c/o custodial officer | [ E ] Noncitizen's atty/rep. | [ E ] DHS

Respondent Name : BARILLAS RESINOS, JACKSON | A-Number : █████████

Riders:

Date: 02/18/2025 By: Tellez, Jerry, Court Staff

# EXHIBIT F



**Markiana Julceus**
Counsel

One Lowenstein Drive
Roseland, New Jersey 07068

T:  (862) 926-2707
M: (973) 525-8496
E:  mjulceus@lowenstein.com

November 6, 2025

<u>**Via email to**</u> BTV-dutyofficer@ice.dhs.gov

Deportation Officer
Buffalo Field Office, Batavia Sub-Office
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement (ICE)

**Re:    Jackson Daniel Barillas Resinos (A# ▇▇▇▇▇ )
          Request for Release**

Deportation Officer:

I am *pro bono* counsel to Jackson Daniel Barillas Resinos (A# ▇▇▇▇▇ ) ("Jackson") who is currently in ICE custody at the Buffalo Federal Detention Facility.  Attached as <u>Exhibit A</u> is a copy of my executed Form G-28.  I am writing to seek Jackson's immediate release from ICE custody and request that you provide me with all copies of documents pertaining to Jackson's recent encounter with ICE and related detention.  Jackson should be released immediately because he is not subject to mandatory detention under Section 235 of the Immigration and Nationality Act and is neither a danger to the community nor a flight risk.

As soon as possible, please provide me with copies of the following:

- Form I-213, Record of Deportable/Inadmissible Alien;
- Form I-286, Notice of Custody Determination;
- I-200 Warrant of Arrest; and
- Any other documents created or relating to Jackson's encounter with ICE.

Jackson is 18 years old and has resided in the United States since 2021 in the care of his older sister and court-appointed custodian.  Upon entering the United States in August 2021 as an unaccompanied minor, he was transferred to the Office of Refugee Resettlement's (ORR) custody and later released to his sister.  On July 30, 2024, the Superior Court of New Jersey, Chancery Division, Family Part (Mercer County), awarded his sister sole legal and physical custody of Jackson and entered Special Immigrant Juvenile Status (SIJS) predicate findings, including that reunification with both parents is not viable due to abandonment and neglect, and that it is not in Jackson's best interests to return to his country of origin, Honduras.  On November 7, 2024, the U.S. Citizen and Immigration Services granted Jackson SIJS with deferred action – a copy of his I-360 approval notice is attached as <u>Exhibit B</u>.

On November 25, 2024, the Department of Homeland Security and Jackson jointly moved to dismiss his removal proceedings in light of his grant of SIJS, reflecting that continuation was no longer in the government's best interest.  The immigration court dismissed Jackson's removal

proceedings on February 17, 2025.  A copy of the Immigration Court's Order granting the joint Motion to Dismiss is attached as <u>Exhibit C</u>.

**There is no basis for detention**.  To the best of counsel's knowledge, Jackson has no criminal convictions.  None of the statutory grounds for mandatory detention is implicated.  As such, ICE retains full discretion to release Jackson on his own recognizance.

**Jackson is not a danger to the community**.  Jackson has no criminal history and has consistently cooperated with immigration authorities.  He has lived with his sister and other family members since his release from ORR in 2021, and there is no evidence suggesting any risk to public safety, or that Jackson is a flight risk.

**Positive equities and humanitarian considerations support Jackson's immediate release**.  Jackson entered the United States at age fourteen to escape parental abuse and neglect.  A New Jersey family court found that reunification with both parents was not viable and that remaining in the United States is in his best interests.  Release allows Jackson to remain in a safe, stable environment while he pursues lawful permanent residence.

**Request for Release**. For these reasons, we respectfully request that you grant Jackson's immediate release on recognizance.

Please do not hesitate to contact me with any questions.  I look forward to discussing this matter with you further, and would appreciate confirmation of receipt of this letter.

Sincerely,

*s/  Markiana J. Julceus*

Markiana J. Julceus

cc: Erica G. Mannix (emannix@lowenstein.com)

# EXHIBIT A



# Notice of Entr of Appearance
## as Attorne or Accredited Representative

### Department of Homeland Securit

**DHS
Form G 28**

OMB No. 1615-0105
Expires 05/31/2021

---

## Part 1. Information About Attorne or Accredited Representative

**1.** USCIS Online Account Number (if any)

▶ [                    ]

### Name of Attorney or Accredited Representative

**2.a.** Family Name (Last Name) [                    ]

**2.b.** Given Name (First Name) [                    ]

**2.c.** Middle Name [                    ]

### Address of Attorney or Accredited Representative

**.a.** Street Number and Name [                    ]

**.b.** ☐ Apt. ☐ Ste. ☐ Flr. [                    ]

**.c.** City or Town [                    ]

**.d.** State [        ]  **.e.** ZIP Code [            ]

**.f.** Province [                    ]

**.g.** Postal Code [                    ]

**.h.** Country [                    ]

### Contact Information of Attorney or Accredited Representative

**4.** Daytime Telephone Number [                    ]

**5.** Mobile Telephone Number (if any) [                    ]

**6.** Email Address (if any) [                    ]

**7.** Fax Number (if any) [                    ]

## Part 2. Eligibilit Information for Attorne or Accredited Representative

Select **all applicable** items.

**1.a.** ☐ I am an attorney eligible to practice law in, and a member in good standing of, the bar of the highest courts of the following states, possessions, territories, commonwealths, or the District of Columbia. If you need extra space to complete this section, use the space provided in **Part 6. Additional Information**.

Licensing Authority [                    ]

**1.b.** Bar Number (if applicable) [                    ]

**1.c.** I (select **onl one** box) ☐ am not ☐ am subject to any order suspending, enjoining, restraining, disbarring, or otherwise restricting me in the practice of law. If you are subject to any orders, use the space provided in **Part 6. Additional Information** to provide an explanation.

**1.d.** Name of Law Firm or Organization (if applicable) [                    ]

**2.a.** ☐ I am an accredited representative of the following qualified nonprofit religious, charitable, social service, or similar organization established in the United States and recognized by the Department of Justice in accordance with 8 CFR part 1292.

**2.b.** Name of Recognized Organization [                    ]

**2.c.** Date of Accreditation (mm/dd/yyyy) [                    ]

**.** ☐ I am associated with [                    ], the attorney or accredited representative of record who previously filed Form G-28 in this case, and my appearance as an attorney or accredited representative for a limited purpose is at his or her request.

**4.a.** ☐ I am a law student or law graduate working under the direct supervision of the attorney or accredited representative of record on this form in accordance with the requirements in 8 CFR 292.1(a)(2).

**4.b.** Name of Law Student or Law Graduate [                    ]

---

## Part . Notice of Appearance as Attorne or Accredited Representative

If you need extra space to complete this section, use the space provided in **Part 6. Additional Information**.

This appearance relates to immigration matters before (select **onl one** box):

**1.a.** ☐ U.S. Citizenship and Immigration Services (USCIS)

**1.b.** List the form numbers or specific matter in which appearance is entered.

**2.a.** ☐ U.S. Immigration and Customs Enforcement (ICE)

**2.b.** List the specific matter in which appearance is entered.

**.a.** ☐ U.S. Customs and Border Protection (CBP)

**.b.** List the specific matter in which appearance is entered.

**4.** Receipt Number (if any)

▶ 

**5.** I enter my appearance as an attorney or accredited representative at the request of the (select **onl one** box):
☐ Applicant   ☐ Petitioner   ☐ Requestor
☐ Beneficiary/Derivative   ☐ Respondent (ICE, CBP)

## Information About Client (Applicant, Petitioner, Requestor, Beneficiary or Derivative, Respondent, or Authorized Signatory for an Entity)

**6.a.** Family Name (Last Name)

**6.b.** Given Name (First Name)

**6.c.** Middle Name

**7.a.** Name of Entity (if applicable)

**7.b.** Title of Authorized Signatory for Entity (if applicable)

**8.** Client s USCIS Online Account Number (if any)

▶ 

**.** Client s Alien Registration Number (A-Number) (if any)

▶ A █████████████

## Client's Contact Information

**10.** Daytime Telephone Number

**11.** Mobile Telephone Number (if any)

**12.** Email Address (if any)

## Mailing Address of Client

**NOTE** Provide the client s mailing address. **Do not** provide the business mailing address of the attorney or accredited representative **unless** it serves as the safe mailing address on the application or petition being filed with this Form G-28.

**1 .a.** Street Number and Name

**1 .b.** ☐ Apt.   ☐ Ste.   ☐ Flr.

**1 .c.** City or Town

**1 .d.** State        **1 .e.** ZIP Code

**1 .f.** Province

**1 .g.** Postal Code

**1 .h.** Country

## Part 4. Client s Consent to Representation and Signature

### Consent to Representation and Release of Information

I have requested the representation of and consented to being represented by the attorney or accredited representative named in **Part 1.** of this form. According to the Privacy Act of 1974 and U.S. Department of Homeland Security (DHS) policy, I also consent to the disclosure to the named attorney or accredited representative of any records pertaining to me that appear in any system of records of USCIS, ICE, or CBP.

## Part 4.  Client s Consent to Representation and Signature (continued)

### Options Regarding Receipt of USCIS Notices and Documents

USCIS will send notices to both a represented party (the client) and his, her, or its attorney or accredited representative either through mail or electronic delivery.  USCIS will send all secure identity documents and Travel Documents to the client s U.S. mailing address.

If you want to have notices and/or secure identity documents sent to your attorney or accredited representative of record rather than to you, please select **all applicable** items below.  You may change these elections through written notice to USCIS.

**1.a.** ☐ I request that USCIS send original notices on an application or petition to the business address of my attorney or accredited representative as listed in this form.

**1.b.** ☐ I request that USCIS send any secure identity document (Permanent Resident Card, Employment Authorization Document, or Travel Document) that I receive to the U.S. business address of my attorney or accredited representative (or to a designated military or diplomatic address in a foreign country (if permitted)).

**NOTE**   If your notice contains Form I-94, Arrival-Departure Record, USCIS will send the notice to the U.S. business address of your attorney or accredited representative.  If you would rather have your Form I-94 sent directly to you, select **Item Number 1.c.**

**1.c.** ☐ I request that USCIS send my notice containing Form I-94 to me at my U.S. mailing address.

### Signature of Client or Authorized Signatory for an Entity

**2.a.** Signature of Client or Authorized Signatory for an Entity

➡ *Detained*

**2.b.** Date of Signature (mm/dd/yyyy)

## Part 5.  Signature of Attorne  or Accredited Representative

I have read and understand the regulations and conditions contained in 8 CFR 103.2 and 292 governing appearances and representation before DHS.  I declare under penalty of perjury under the laws of the United States that the information I have provided on this form is true and correct.

**1.a** Signature of Attorney or Accredited Representative

**1.b.** Date of Signature (mm/dd/yyyy)

**2.a.** Signature of Law Student or Law Graduate

**2.b.** Date of Signature (mm/dd/yyyy)

## Part 6. Additional Information

If you need extra space to provide any additional information within this form, use the space below. If you need more space than what is provided, you may make copies of this page to complete and file with this form or attach a separate sheet of paper. Type or print your name at the top of each sheet; indicate the **Page Number**, **Part Number**, and **Item Number** to which your answer refers; and sign and date each sheet.

**1.a** Family Name
(Last Name)

**1.b.** Given Name
(First Name)

**1.c.** Middle Name

**2.a.** Page Number     **2.b.** Part Number     **2.c.** Item Number

**2.d.**

**.a.** Page Number     **.b.** Part Number     **.c.** Item Number

**.d.**

**4.a.** Page Number     **4.b.** Part Number     **4.c.** Item Number

**4.d.**

**5.a.** Page Number     **5.b.** Part Number     **5.c.** Item Number

**5.d.**

**6.a.** Page Number     **6.b.** Part Number     **6.c.** Item Number

**6.d.**

# EXHIBIT B



Department of Homeland Security
U.S. Citizenship and Immigration Services

Form I-797C, Notice of Action

---

## THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

| Receipt Number | | Case Type |
|---|---|---|
| ▓▓▓▓▓ | | I360 - PETITION FOR AMERASIAN, WIDOWER, OR SPECIAL IMMIGRANT |

| Received Date | Priority Date | Petitioner |
|---|---|---|
| 08/12/2024 | 08/12/2024 | ▓▓ BARILLAS RESINOS, JACKSON DANIEL |

| Notice Date | Page | Beneficiary |
|---|---|---|
| 11/07/2024 | 1 of 1 | ▓▓ BARILLAS RESINOS, JACKSON DANIEL |

| | |
|---|---|
| JACKSON DANIEL BARILLAS RESINOS<br>c/o MARKIANA JULCEUS- LOWENSTEIN SANDL<br>ONE LOWENSTEIN DRIVE<br>ROSELAND  NJ  07068 | Notice Type:  Approval Notice<br>Class:  SL6<br>Section:  Special Immigrant-Juvenile |

We have mailed an official notice about this case (and any relevant documentation) according to the mailing preferences you chose on Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative. **This is a courtesy copy, not the official notice.**

**What the Official Notice Said**

I-797 Approval Notice for **Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant** with Deferred Action.

USCIS has approved the above petition.

**Grant of Deferred Action:**

Your **Form I-360** petition has been approved, but you do not yet have a visa available to file an application for adjustment of status. USCIS has determined that you warrant a favorable exercise of discretion to receive deferred action. As a result, you have been placed in deferred action and you may be issued an employment authorization document. Deferred action is an act of administrative convenience to the government which gives some cases lower priority for removal from the United States for a specified period of time.

Your grant of deferred action will remain in effect for a period of four years from the date of this notice unless terminated earlier by USCIS.

Pursuant to 8 CFR Sec. 274a.12(c)(14), a noncitizen with approved deferred action is eligible to apply for employment authorization with the appropriate fee. If you would like to apply for employment authorization, you must properly file Form I-765, Application for Employment Authorization, and enter eligibility category (c)(14). You will receive separate correspondence regarding the adjudication of your Form I-765 once it is filed.

If you are represented by an attorney, all further correspondence should be accompanied by Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative.

USCIS will notify you separately about any other cases you have filed.

**This form is not a visa, nor may you use it in place of a visa.**

**This form does not constitute employment authorization, nor may you use it in place of an Employment Authorization Document.**

---

Please see the additional information on the back. You will be notified separately about any other cases you filed.

**USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online.**

| | |
|---|---|
| National Benefits Center<br>U.S. CITIZENSHIP & IMMIGRATION SVC<br>P.O. Box 648003<br>Lee's Summit MO  64002<br>**USCIS Contact Center: www.uscis.gov/contactcenter** |  |

---

If this is an interview or biometrics appointment notice, please see the back of this notice for important information.     Form I-797C  10/13/21

# EXHIBIT C



**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**NEWARK IMMIGRATION COURT**

Respondent Name:

    BARILLAS RESINOS, JACKSON

To:

    Julceus, Markiana J
    1 Lowenstein Dr
    Roseland, NJ 07068

A-Number:



Riders:
In Removal Proceedings
Initiated by the Department of Homeland Security
Date:
02/17/2025

## ORDER ON MOTION TO DISMISS

☑ The Respondent ☑ the Department of Homeland Security ☑ the parties jointly has/have filed a motion to dismiss these proceedings under 8 CFR 1239.2(c). The moving party has given notice of the motion to the non-moving party and the court has provided the non-moving party with an opportunity to respond. The motion is ☐ opposed ☐ unopposed.

After considering the facts and circumstances, the immigration court orders that the motion to dismiss is:

☑ Granted without prejudice
☐ Denied

Further explanation:

IT IS SO ORDERED.

Immigration Judge: CHENG, DAVID 02/17/2025

## Certificate of Service

This document was served:

Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service | [ U ] Address Unavailable

To: [ ] Noncitizen | [ ] Noncitizen c/o custodial officer | [ E ] Noncitizen's atty/rep. | [ E ] DHS

Respondent Name : BARILLAS RESINOS, JACKSON | A-Number :

Riders:

Date: 02/18/2025 By: Tellez, Jerry, Court Staff

# EXHIBIT G

**Hernandez, David**

| | |
|---|---|
| **From:** | BTV-dutyofficer, <BTV-dutyofficer@ice.dhs.gov> |
| **Sent:** | Thursday, November 13, 2025 10:25 AM |
| **To:** | Julceus, Markiana J. |
| **Cc:** | Mannix, Erica G. |
| **Subject:** | RE: Jackson Daniel Barillas Resinos (A-Number ███████) -Request for Documents and Release |

**From:** Julceus, Markiana J. <MJulceus@lowenstein.com>
**Sent:** Wednesday, November 12, 2025 1:55 PM
**To:** BTV-dutyofficer, <BTV-dutyofficer@ice.dhs.gov>
**Cc:** Mannix, Erica G. <EMannix@lowenstein.com>
**Subject:** RE: Jackson Daniel Barillas Resinos (A-Number ███████) -Request for Documents and Release

> **CAUTION:** This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. Please use the Cofense Report Phishing button to report. If the button is not present, click here and follow instructions.

███████

**Markiana Julceus**
she, her, hers

1

Counsel
Lowenstein Sandler LLP

T: (862) 926-2707
M: (973) 525-8496





---

**From:** Julceus, Markiana J.
**Sent:** Thursday, November 6, 2025 5:08 PM
**To:** 'BTV-dutyofficer,' <BTV-dutyofficer@ice.dhs.gov>
**Cc:** Mannix, Erica G. <EMannix@lowenstein.com>
**Subject:** RE: Jackson Daniel Barillas Resinos (A-Number ⬛⬛⬛⬛⬛) - Contact for Deportation Officer

Thank you. Please forward the attached correspondence to the appropriate deportation officer.

Best,

Markiana

---

**From:** BTV-dutyofficer, BTV-dutyofficer@ice.dhs.gov
**Sent:** Thursday, November 6, 2025 1:00 PM
**To:** Julceus, Markiana J. MJulceus@lowenstein.com
**Cc:** Mannix, Erica G. EMannix@lowenstein.com
**Subject:** RE: Jackson Daniel Barillas Resinos (A-Number ⬛⬛⬛⬛⬛) - Contact for Deportation Officer

Any correspondence with the DO can be routed through this inbox.

Thank you,

Trevor Secore
Deportation Officer
Buffalo Field Office, Batavia Sub-Office
**Enforcement and Removal Operations**
**U.S. Immigration and Customs Enforcement**

---

**From:** Julceus, Markiana J. <MJulceus@lowenstein.com>
**Sent:** Thursday, November 6, 2025 12:58 PM
**To:** BTV-dutyofficer, <BTV-dutyofficer@ice.dhs.gov>
**Cc:** Mannix, Erica G. <EMannix@lowenstein.com>
**Subject:** Jackson Daniel Barillas Resinos (A-Number ⬛⬛⬛⬛⬛) - Contact for Deportation Officer

> You don't often get email from mjulceus@lowenstein.com. Learn why this is important

**CAUTION:** This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. Please use the Cofense Report Phishing button to report. If the button is not present, click here and follow instructions.

2

Good afternoon –

I am pro bono counsel and attorney of record for Jackson Daniel Barillas Resinos (A-Number ██████) (Date of Birth: ██████) whom I understand is currently detained in the Buffalo Federal Detention Facility. Attached is a copy of my G28. Please provide the contact information for Jackson's detention officer as soon as possible.  Please let me know if you need any further information from me.

Regards,

Markiana

**Markiana Julceus**
she, her, hers
Counsel
Lowenstein Sandler LLP

T: (862) 926-2707
M: (973) 525-8496





This message contains confidential information, intended only for the person(s) named above, which may also be privileged. Any use, distribution, copying or disclosure by any other person is strictly prohibited. In such case, you should delete this message and kindly notify the sender via reply e-mail. Please advise immediately if you or your employer does not consent to Internet e-mail for messages of this kind.

This message contains confidential information, intended only for the person(s) named above, which may also be privileged. Any use, distribution, copying or disclosure by any other person is strictly prohibited. In such case, you should delete this message and kindly notify the sender via reply e-mail. Please advise immediately if you or your employer does not consent to Internet e-mail for messages of this kind.

# EXHIBIT H

**Hernandez, David**

| | |
|---|---|
| **From:** | Julceus, Markiana J. |
| **Sent:** | Thursday, November 13, 2025 10:39 AM |
| **To:** | BTV-dutyofficer, |
| **Cc:** | Mannix, Erica G. |
| **Subject:** | RE: Jackson Daniel Barillas Resinos (A-Number ███████ ) -Request for Documents and Release |

DO Mulvey  –

Please immediately identify on what basis Jackson is being held and what the statutory grounds are for detention. Additionally, as requested in my November 7th letter, please provide all documents pertaining to Jackson's detention including the Form I-213, Record of Deportable/Inadmissible Alien; Form I-286, Notice of Custody Determination; I-200 Warrant of Arrest; and I-862 Notice to Appear.

Best,

Markiana

**Markiana Julceus**
she, her, hers
Counsel
Lowenstein Sandler LLP

T: (862) 926-2707
M: (973) 525-8496

 



---

**From:** BTV-dutyofficer, <BTV-dutyofficer@ice.dhs.gov>
**Sent:** Thursday, November 13, 2025 10:25 AM
**To:** Julceus, Markiana J. <MJulceus@lowenstein.com>
**Cc:** Mannix, Erica G. <EMannix@lowenstein.com>
**Subject:** RE: Jackson Daniel Barillas Resinos (A-Number ███████ ) -Request for Documents and Release

Good morning,

After careful review and consideration, ICE has denied your request for release at this time.

Thank you.

Respectfully,

DO Mulvey
Duty Officer
Deportation Officer
Buffalo Field Office - FDF
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement
O: (585) 344-6540

---

**From:** Julceus, Markiana J. <MJulceus@lowenstein.com>
**Sent:** Wednesday, November 12, 2025 1:55 PM
**To:** BTV-dutyofficer, <BTV-dutyofficer@ice.dhs.gov>
**Cc:** Mannix, Erica G. <EMannix@lowenstein.com>
**Subject:** RE: Jackson Daniel Barillas Resinos (A-Number ▉▉▉▉▉▉) -Request for Documents and Release

> **CAUTION:** This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. Please use the Cofense Report Phishing button to report. If the button is not present, click here and follow instructions.

Good afternoon –

I am following up on my November 6th email and letter concerning Jackson Daniel Barillas Resinos (A-Number ▉▉▉▉▉▉).

Best,

Markiana

**Markiana Julceus**
she, her, hers
Counsel
Lowenstein Sandler LLP

T: (862) 926-2707
M: (973) 525-8496

 



---

**From:** Julceus, Markiana J.
**Sent:** Thursday, November 6, 2025 5:08 PM
**To:** 'BTV-dutyofficer,' <BTV-dutyofficer@ice.dhs.gov>
**Cc:** Mannix, Erica G. <EMannix@lowenstein.com>
**Subject:** RE: Jackson Daniel Barillas Resinos (A-Number ▉▉▉▉▉▉) - Contact for Deportation Officer

Thank you. Please forward the attached correspondence to the appropriate deportation officer.

Best,

Markiana

---

**From:** BTV-dutyofficer, BTV-dutyofficer@ice.dhs.gov
**Sent:** Thursday, November 6, 2025 1:00 PM
**To:** Julceus, Markiana J. MJulceus@lowenstein.com
**Cc:** Mannix, Erica G. EMannix@lowenstein.com
**Subject:** RE: Jackson Daniel Barillas Resinos (A-Number ███████) - Contact for Deportation Officer

Any correspondence with the DO can be routed through this inbox.

Thank you,

Trevor Secore
Deportation Officer
Buffalo Field Office, Batavia Sub-Office
**Enforcement and Removal Operations**
**U.S. Immigration and Customs Enforcement**

---

**From:** Julceus, Markiana J. <MJulceus@lowenstein.com>
**Sent:** Thursday, November 6, 2025 12:58 PM
**To:** BTV-dutyofficer, <BTV-dutyofficer@ice.dhs.gov>
**Cc:** Mannix, Erica G. <EMannix@lowenstein.com>
**Subject:** Jackson Daniel Barillas Resinos (A-Number ███████) - Contact for Deportation Officer

You don't often get email from mjulceus@lowenstein.com. Learn why this is important

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. Please use the Cofense Report Phishing button to report. If the button is not present, click here and follow instructions.

Good afternoon –

I am pro bono counsel and attorney of record for Jackson Daniel Barillas Resinos (A-Number ███████) (Date of Birth: ███████) whom I understand is currently detained in the Buffalo Federal Detention Facility. Attached is a copy of my G28. Please provide the contact information for Jackson's detention officer as soon as possible. Please let me know if you need any further information from me.

Regards,

Markiana

**Markiana Julceus**
she, her, hers
Counsel
Lowenstein Sandler LLP

T: (862) 926-2707

M: (973) 525-8496





This message contains confidential information, intended only for the person(s) named above, which may also be privileged. Any use, distribution, copying or disclosure by any other person is strictly prohibited. In such case, you should delete this message and kindly notify the sender via reply e-mail. Please advise immediately if you or your employer does not consent to Internet e-mail for messages of this kind.

This message contains confidential information, intended only for the person(s) named above, which may also be privileged. Any use, distribution, copying or disclosure by any other person is strictly prohibited. In such case, you should delete this message and kindly notify the sender via reply e-mail. Please advise immediately if you or your employer does not consent to Internet e-mail for messages of this kind.

## Hernandez, David

| | |
|---|---|
| **From:** | Julceus, Markiana J. |
| **Sent:** | Monday, November 17, 2025 3:43 PM |
| **To:** | Jeffrey.J.Searls@ice.dhs.gov |
| **Cc:** | Mannix, Erica G. |
| **Subject:** | Jackson Daniel Barillas Resinos (A-Number █████████) |
| **Attachments:** | G280064128 - Executed G2A for J. Barillas - 11.6.2025.pdf |

Good afternoon –

I am pro bono counsel and attorney of record for Jackson Daniel Barillas Resinos (A-Number ████████) whom I understand is currently detained in the Buffalo Federal Detention Facility. Attached is a copy of my G28. This morning at 8 am, I was scheduled for a legal call with Jackson over Teams.  He was not brought for the call and I did not receive a response from either Jackson's Deportation Officer or the video conferencing email inbox (bfdf-vav@outlook.com).

Could you please confirm whether Jackson is still housed in the Buffalo Federal Detention Facility and if so, explain why he was not brought for this morning's call? Additionally, I have requested copies of all documents pertaining to Jackson's detention and have not received them or any other information pertaining to the basis for Jackson's detention. Please facilitate production of the requested documents, including the Form I-213, Record of Deportable/Inadmissible Alien; Form I-286, Notice of Custody Determination; I-200 Warrant of Arrest; and I-862 Notice to Appear.

Regards,

Markiana

**Markiana Julceus**
she, her, hers
Counsel
Lowenstein Sandler LLP

T: (862) 926-2707
M: (973) 525-8496

 



# EXHIBIT I

DEPARTMENT OF HOMELAND SECURITY
**NOTICE TO APPEAR**

DOB:

Event No: BTV2611000005

In removal proceedings under section 240 of the Immigration and Nationality Act:

Subject ID: 400620302          FINS: 1311741142          File No:

In the Matter of:

Respondent: JACKSON BARILLAS-RESINOS                                    currently residing at:

4250 Federal Dr Batavia, NEW YORK 140201094                    (980) 369-5496

(Number, street, city, state and ZIP code)          (Area code and phone number)

☐ You are an arriving alien.

☒ You are an alien present in the United States who has not been admitted or paroled.

☐ You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that you:

1. You are not a citizen or national of the United States;

2. You are a native of HONDURAS and a citizen of HONDURAS;

3. You entered the United States at or near unknown place, on or about unknown date;

4. You were not then admitted or paroled after inspection by an Immigration Officer.

5. You are an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act; and/or See Continuation Page Made a Part Hereof

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

See Continuation Page Made a Part Hereof

☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.

☐ Section 235(b)(1) order was vacated pursuant to:          ☐ 8CFR 208.30          ☐ 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

4250 FEDERAL DR, RM F108 BATAVIA, NEW YORK 14020. EOIR SPC Batavia, NY

(Complete Address of Immigration Court, including Room Number, if any)

on December 18, 2025 at 8:30 am to show why you should not be removed from the United States based on the
(Date)          (Time)

charge(s) set forth above.          B 3508 EVERY - SDDO

(Signature and Title of Issuing Officer)

Date: November 6, 2025          Batavia ,NY

(City and State)

## Notice to Respondent

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are in removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 1003.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents that you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing. At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear, including that you are inadmissible or removable. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge. You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of voluntary departure. You will be given a reasonable opportunity to make any such application to the immigration judge.

**One-Year Asylum Application Deadline:** If you believe you may be eligible for asylum, you must file a Form I-589, Application for Asylum and for Withholding of Removal. The Form I-589, Instructions, and information on where to file the Form can be found at **www.uscis.gov/i-589**. Failure to file the Form I-589 within one year of arrival may bar you from eligibility to apply for asylum pursuant to section 208(a)(2)(B) of the Immigration and Nationality Act.

**Failure to appear:** You are required to provide the Department of Homeland Security (DHS), in writing, with your full mailing address and telephone number. You must notify the Immigration Court and the DHS immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to your local DHS office, listed on the internet at **http://www.ice.gov/contact/ero**, as directed by the DHS and required by statute and regulation. Immigration regulations at 8 CFR 1241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United States and for ten years after your departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Immigration and Nationality Act.

**U.S. Citizenship Claims:** If you believe you are a United States citizen, please advise the DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903.

**Sensitive locations:** To the extent that an enforcement action leading to a removal proceeding was taken against Respondent at a location described in 8 U.S.C. § 1229(e)(1), such action complied with 8 U.S.C. § 1367.

## Request for Prompt Hearing

To expedite a determination in my case, I request this Notice to Appear be filed with the Executive Office for Immigration Review as soon as possible. I waive my right to a 10-day period prior to appearing before an immigration judge and request my hearing be scheduled.

Before:

_____
(Signature of Respondent)

_____
(Signature and Title of Immigration Officer)

Date: _____

## Certificate of Service

This Notice To Appear was served on the respondent by me on **November 6, 2025**, in the following manner and in compliance with section 239(a)(1) of the Act.

[X] in person   [ ] by certified mail, returned receipt # _____ requested   [ ] by regular mail
[ ] Attached is a credible fear worksheet.
[X] Attached is a list of organization and attorneys which provide free legal services.

The alien was provided oral notice in the **SPANISH** language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

*refused to sign*
_____
(Signature of Respondent if Personally Served)

_____  SCOTT BURNSIDE - DO
(Signature and Title of officer)

### Privacy Act Statement

**Authority:**
The Department of Homeland Security through U.S. Immigration and Customs Enforcement (ICE), U.S Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (USCIS) are authorized to collect the information requested on this form pursuant to Sections 103, 237, 239, 240, and 290 of the Immigration and Nationality Act (INA), as amended (8 U.S.C. 1103, 1229, 1229a, and 1360), and the regulations issued pursuant thereto.

**Purpose:**
You are being asked to sign and date this Notice to Appear (NTA) as an acknowledgement of personal receipt of this notice. This notice, when filed with the U.S. Department of Justice's (DOJ) Executive Office for Immigration Review (EOIR), initiates removal proceedings. The NTA contains information regarding the nature of the proceedings against you, the legal authority under which proceedings are conducted, the acts or conduct alleged against you to be in violation of law, the charges against you, and the statutory provisions alleged to have been violated. The NTA also includes information about the conduct of the removal hearing, your right to representation at no expense to the government, the requirement to inform EOIR of any change in address, the consequences for failing to appear, and that generally, if you wish to apply for asylum, you must do so within one year of your arrival in the United States. If you choose to sign and date the NTA, that information will be used to confirm that you received it, and for recordkeeping.

**Routine Uses:**
For United States Citizens, Lawful Permanent Residents, or individuals whose records are covered by the Judicial Redress Act of 2015 (5 U.S.C. § 552a note), your information may be disclosed in accordance with the Privacy Act of 1974, 5 U.S.C. § 552a(b), including pursuant to the routine uses published in the following DHS systems of records notices (SORN): DHS/USCIS/ICE/CBP-001 Alien File, Index, and National File Tracking System of Records, DHS/USCIS-007 Benefit Information System, DHS/ICE-011 Criminal Arrest Records and Immigration Enforcement Records (CARIER), and DHS/ICE-003 General Counsel Electronic Management System (GEMS), and DHS/CBP-023 Border Patrol Enforcement Records (BPER). These SORNs can be viewed at https://www.dhs.gov/system-records-notices-sorns. When disclosed to the DOJ's EOIR for immigration proceedings, this information that is maintained and used by DOJ is covered by the following DOJ SORN: EOIR-001, Records and Management Information System, or any updated or successor SORN, which can be viewed at https://www.justice.gov/opcl/doj-systems-records. Further, your information may be disclosed pursuant to routine uses described in the abovementioned DHS SORNs or DOJ EOIR SORN to federal, state, local, tribal, territorial, and foreign law enforcement agencies for enforcement, investigatory, litigation, or other similar purposes.

For all others, as appropriate under United States law and DHS policy, the information you provide may be shared internally within DHS, as well as with federal, state, local, tribal, territorial, and foreign law enforcement; other government agencies; and other parties for enforcement, investigatory, litigation, or other similar purposes.

**Disclosure:**
Providing your signature and the date of your signature is voluntary. There are no effects on you for not providing your signature and date; however, removal proceedings may continue notwithstanding the failure or refusal to provide this information.

**U.S. Department of Homeland Security**

**Continuation Page for Form** I-862

| Alien's Name<br>BARILLAS-RESINOS, JACKSON | File Number<br><br>Event No: BTV2611000005 | Date<br>11/06/2025 |
|---|---|---|

THE SERVICE ALLEGES THAT YOU:
--------------------------------------------------------------------------------

6. You are an immigrant not in possession of a valid unexpired passport, or other suitable travel document, or document of identity and nationality.

ON THE BASIS OF THE FOREGOING, IT IS CHARGED THAT YOU ARE SUBJECT TO REMOVAL FROM THE UNITED STATES PURSUANT TO THE FOLLOWING PROVISION(S) OF LAW:
--------------------------------------------------------------------------------

212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended, in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.

212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (Act), as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.

| Signature<br>B 3508 EVERY | Title<br>SDDO |
|---|---|

4 of 4 Pages

Form I-831 Continuation Page (Rev. 08/01/07)

# EXHIBIT J

November 10, 2025



**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
National Benefits Center
P.O. Box 25920
Overland Park, KS 66225

**U.S. Citizenship
and Immigration
Services**



JACKSON DANIEL BARILLAS RESINOS
c/o MARKIANA J JULCEUS
LOWENSTEIN SANDLER LLP
ONE LOWENSTEIN DRIVE
ROSELAND, NJ 07068

RE: JACKSON DANIEL BARILLAS RESINOS
I-360, Petition for Amerasian, Widow(er), or Special
Immigrant

## TERMINATION NOTICE

Dear JACKSON BARILLAS RESINOS:

### Termination of Special Immigrant Juvenile Deferred Action

This letter serves as notification that U.S. Citizenship and Immigration Services (USCIS) has
individually reviewed your case and exercised discretion to terminate your period of deferred action,
which began on November 7, 2024, in connection with your approved Form I-360, Petition for
Amerasian, Widow(er) or Special Immigrant Juvenile (SIJ). USCIS approved your Form I-360, which
granted you SIJ classification on November 7, 2024, and it remains approved.

Deferred action is a discretionary determination, however, to defer immigration enforcement action
against an individual as an act of prosecutorial discretion. You may not appeal or move to
reopen/reconsider this decision.

### Notice of Intent to Revoke Deferred Action-Based Employment Authorization

**If you have been granted employment authorization based on deferred action pursuant to 8 CFR
274a.12(c)(14), and your employment authorization has not automatically terminated as set
forth in 8 CFR 274a.14(a) the following applies to you:**

Consistent with 8 CFR 274a.14(b), USCIS provides this notice of intent to revoke your deferred
action-based employment authorization under 8 CFR 274a.12(c)(14). USCIS intends to revoke your
employment authorization because the condition upon which your employment authorization was
granted no longer exists as your period of deferred action has been terminated. See 8 CFR
274a.14(b)(1)(i).

By operation of this notice, your unexpired deferred action-based employment authorization will be revoked 15 days from the date of this notice unless you submit countervailing evidence that you continue to have deferred action through the expiration date on your Employment Authorization Document. You may submit countervailing evidence by uploading it to your myUSCIS online account before November 25, 2025. See 8 CFR 274a.14(b)(2) or by mailing it to the address below by November 28, 2025.

Mail your countervailing evidence and a copy of this letter to:

**U.S. Department of Homeland Security**
P.O. Box 648004
Lee's Summit, MO 64002

For express delivery, mail your countervailing evidence and a copy of this letter to:

**USCIS National Benefits Center**
Attention: Adjudication – Ancillaries
850 NW Chipman Rd., Suite 5000
Lee's Summit, MO 64063

The timely submission of countervailing evidence does not impact the termination of your period of deferred action described above. Any decision to revoke your EAD is final, and no appeal shall lie from the decision to revoke an EAD. See 8 CFR 274a.14(b)(2). If you work without authorization, you are in violation of the law.

Rose M. Kendrick
Acting Director
Officer: OA0057